110

[No. 28313-1-II.   Division Two.   September 9, 2003.]

Low Income Housing Institute, et al., *Appellants*, v. The City of Lakewood, et al., *Respondents*.

*John C. Purbaugh* (of *Northwest Justice Project*), *Steve A. Robins* (of *Columbia Legal Services*), and *Michael J. Mirra* (of *Tacoma Housing Authority*), for appellants.

*John T. Washburn* and *Susan E. Drummond* (of *Foster Pepper & Schefelman, P.L.L.C.*) and *Christine O. Gregoire, Attorney General*, and *Sharon S. Eckholm, Assistant*, for respondents.

QUINN-BRINTNALL, A.C.J. — Low Income Housing Institute (LIHI)[1] challenges the Central Puget Sound Growth Management Hearings Board's (Board) approval of the City of Lakewood's comprehensive plan (Plan). LIHI claims that Lakewood's Plan fails to further the goal of the Growth Management Act (GMA), chapter 36.70A RCW, to "encourage the availability of affordable housing" (Administrative Record (AR) at 1741) and that it is not consistent with Pierce County's County-Wide Planning Policies (CPP) requiring that the City assess not only its affordable housing demands but also meet these demands with approved methods set out in the CPP. Because the Board did not address how the Lakewood Plan satisfied the affordable housing demands identified under a methodology required

---

[1] The appellants include the Low Income Housing Institute, the Fair Housing Center of South Puget Sound, and Lakewood residents V.L. Kershaw, Starlit Rothe, and Beverly Edwards. They are represented by the Northwest Justice Project and Columbia Legal Services. We refer to appellants collectively as LIHI.

by the Pierce County CPP, we remand to the Board to address these issues.

## FACTS

The city of Lakewood was incorporated in 1996 and enacted a comprehensive plan in 2000. LIHI challenged the adequacy of the Plan before the Board. The two primary challenges raised in this appeal are that the Plan failed to (1) further GMA affordable housing goals and (2) satisfy Pierce County's CPP requiring Lakewood to identify and meet its projected affordable housing needs using one or more specified methods in the CPP.

LIHI specifically objected to the Plan's treatment of two residential neighborhoods, American Lake Gardens and Springbrook. The two neighborhoods are geographically isolated from the rest of the City by Interstate 5 and border McChord Air Force Base and Fort Lewis. They lack sewers "and most property is 'old, run down, and undervalued.'" AR at 3331. Under the Plan, 35 percent of these two lower income neighborhoods are designated for industrial uses.

Because of the resulting loss of affordable housing, Pierce County, the Washington Department of Community, Trade, and Economic Development, and Lakewood's own consultants objected to the industrial designation of American Lake Gardens and Springbrook.

In a prefatory note, the Board praised Lakewood's efforts but found LIHI's claim that the City had failed to enact development regulations to be well taken and remanded the Plan back to the City to enact development regulations. *See* RCW 36.70A.040. LIHI simultaneously appealed certain aspects of the Plan the Board affirmed to Thurston County Superior Court, arguing mainly that the Plan "fails to adequately address present and projected housing needs of low-income persons." Clerk's Papers (CP) at 3.

The superior court entered a Decision, Final Order and Judgment on December 21, 2001. It ruled that LIHI had

satisfied its burden under RCW 34.05.570(3)(f)[2] to prove that the Board failed to decide issues numbered 4 and 8. The court concluded that the Board had failed to adequately articulate a sufficient basis for its decision that the Plan contained "[a] housing element ensuring the vitality and character of established residential neighborhoods" as required by RCW 36.70A.070(2) (Board's Issue No. 4). CP at 289. In addition, the Board did not address how the Plan "makes adequate provisions for existing and projected needs of all economic segments of the community," as required by RCW 36.70A.070(2)(d) (Board's Issue No. 8). CP at 289. The superior court remanded these two matters to the Board for further determination. The superior court also concluded that LIHI had not proved that the Board failed to decide issue 9 (whether the Plan meets the GMA goal of encouraging availability of affordable housing) and issue 11 (whether the Plan is inconsistent with Pierce County's CPP).

LIHI appeals the superior court's decision regarding issues 9 and 11 and the denial of LIHI's motion to add a determination of nonsignificance (DNS) to the administrative record.

## ANALYSIS

### STANDARD OF REVIEW

We review decisions of the Board under the Administrative Procedure Act (APA), chapter 34.05 RCW, which calls for a review of the record created before the Board—not the decision of the superior court. *Buechel v. Dep't of Ecology*, 125 Wn.2d 196, 202, 884 P.2d 910 (1994). We review the Board's legal conclusions de novo, giving sub-

---

[2] RCW 34.05.570(3) states:

Review of agency orders in adjudicative proceedings. The court shall grant relief from an agency order in an adjudicative proceeding only if it determines that:

. . . .

(f) The agency has not decided all issues requiring resolution by the agency.

stantial weight to the Board's interpretation of the statute it administers. *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 136 Wn.2d 38, 46, 959 P.2d 1091 (1998); *Diehl v. Mason County*, 94 Wn. App. 645, 652, 972 P.2d 543 (1999).

We grant relief from the Board's order only if we determine (1) that the Board had erroneously interpreted or applied the law, (2) that the order is not supported by evidence that is substantial when viewed in light of the whole record before the court, (3) *that the Board has not decided all issues requiring its resolution*, or (4) that the order is arbitrary or capricious. *See* RCW 34.05.570(3)(d), (e), (f), and (i).

Here we examine (1) whether the record before the Board and its findings establish that the Board decided whether Lakewood's Plan was consistent with the GMA goal of encouraging availability of affordable housing and (2) whether the record before the Board and its findings establish that the Board decided whether Lakewood's Plan is consistent with Pierce County's CPP.

PLAN'S CONSISTENCY WITH THE GMA (ISSUE No. 9)

The Board rejected LIHI's claim that Lakewood's Plan failed to meet the GMA goal of encouraging the availability of affordable housing (Board's Issue No. 9). It explained that "[b]ecause LIHI cannot show a noncompliance with a specific requirement of the Act, it cannot prove that the City has failed to be guided by the Housing Goal. Therefore, Legal Issue 9 must similarly be dismissed." AR at 3341.

█ The Board's ruling shows that it did not address whether the Lakewood Plan furthered the GMA goal of encouraging the availability of affordable housing as RCW 36.70A.020(4) required but, instead, decided whether LIHI proved that Lakewood had failed to comply with a specific requirement of the Act. The Board is required to consider both goals and the specific requirements in determining whether a plan complies with the GMA:

The board shall find compliance [with GMA] unless it determines that the action by the state agency, county, or city is clearly erroneous in view of the entire record before the board and in light of the *goals* and requirements of this chapter.

RCW 36.70A.320(3) (emphasis added).

Likewise our Supreme Court relied on both GMA planning goals and regulations as independent bases for rejecting an amendment to the King County Comprehensive Plan that would have allowed for recreational use of agricultural land.

When read together, RCW 36.70A.020(8) [goals], .060(1) [development regulations for natural resource lands and critical areas], and .170 [designations for natural resource lands and critical areas] evidence a legislative mandate for the conservation of agricultural land. Further, RCW 36.70A.177 [innovative zoning techniques for agricultural lands] must be interpreted to harmonize with that mandate. Nothing in the Act permits recreational facilities to supplant agricultural uses on designated lands with prime soils for agriculture.

*King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 562, 14 P.3d 133 (2000).

Although here the Board may have correctly ruled that LIHI did not prove that Lakewood failed to comply with a specific GMA requirement, it should also have addressed whether and how the Lakewood Plan "[e]ncourage[d] the availability of affordable housing to all economic segments of the population . . . promote[d] a variety of residential densities and housing types, and encourage[d] preservation of existing housing stock" as required by the affordable housing goal set forth in RCW 36.70A.020(4).[3]

---

[3] LIHI asks us to hold that the record conclusively establishes that the Lakewood Plan does not further GMA affordable housing goals citing the City's Final Environmental Impact Statement: "Supply of affordable housing likely to decrease significantly by 2017." AR at 1040. The City contends that this is an isolated statement, taken out of context and that it applies only to American Lake Gardens and Springbrook, not the entire City. Because the Board, not this court, is the proper entity to resolve this dispute we do not decide this issue.

PLAN'S CONSISTENCY WITH CPP ON AFFORDABLE HOUSING (ISSUE 11)

■ As it did below, LIHI asserts that the Plan is inconsistent with the CPP of Pierce County. The Board concluded

that LIHI has failed to carry its burden to show inconsistency between the provisions of Lakewood's Plan and the requirements of the Pierce County CPPs. The Board's jurisdiction is limited by RCW 36.70A.280.[4] The other state and federal statutes to which LIHI points are outside the Board's jurisdiction.

AR at 3345.

---

[4] RCW 36.70A.280 states:

*(1) A growth management hearings board shall hear and determine only those petitions alleging either:*

*(a) That a state agency, county, or city planning under this chapter is not in compliance with the requirements of this chapter,* chapter 90.58 RCW as it relates to the adoption of shoreline master programs or amendments thereto, or chapter 43.21C RCW as it relates to plans, development regulations, or amendments, adopted under RCW 36.70A.040 or chapter 90.58 RCW; or

(b) That the twenty-year growth management planning population projections adopted by the office of financial management pursuant to RCW 43.62.035 should be adjusted.

(2) A petition may be filed only by: (a) The state, or a county or city that plans under this chapter; (b) a person who has participated orally or in writing before the county or city regarding the matter on which a review is being requested; (c) a person who is certified by the governor within sixty days of filing the request with the board; or (d) a person qualified pursuant to RCW 34.05.530.

(3) For purposes of this section "person" means any individual, partnership, corporation, association, state agency, governmental subdivision or unit thereof, or public or private organization or entity of any character.

(4) When considering a possible adjustment to a growth management planning population projection prepared by the office of financial management, a board shall consider the implications of any such adjustment to the population forecast for the entire state.

The rationale for any adjustment that is adopted by a board must be documented and filed with the office of financial management within ten working days after adoption.

If adjusted by a board, a county growth management planning population projection shall only be used for the planning purposes set forth in this chapter and shall be known as a "board adjusted population projection". None of these changes shall affect the official state and county population forecasts prepared by the office of financial management, which shall continue to be used for state budget and planning purposes.

(Emphasis added.)

Because the City and the County have common borders and related regional issues the law requires that Lakewood's Plan be consistent with Pierce County's CPP.

> The comprehensive plan of each county or city that is adopted pursuant to RCW 36.70A.040 shall be coordinated with, and consistent with, the comprehensive plans adopted pursuant to RCW 36.70A.040 of other counties or cities with which the county or city has, in part, common borders or related regional issues.

RCW 36.70A.100.

The City claims that LIHI takes a statement in the Final Environmental Impact Statement (FEIS) (that the supply of affordable housing is likely to decrease significantly by 2017) out of context, arguing that it is "isolated language" that is buried in a table. It argues that the quote "was meant to address the fact that housing in American Lake Gardens and Springbrook will decrease, not that housing over the entire City will decrease." Br. of Resp't at 21. But the table is titled "Summary of Impacts, Mitigation Measures, and Unavailable Adverse Impacts" (AR at 1040), and it is not limited to housing decreases in American Lake Gardens and Springbrook. We agree with LIHI that the Board was presented with evidence that the Plan failed to satisfy the requirements of the CPP, but it did not fully decide this issue as RCW 34.05.570(3)(f) required.

ARTICULATION OF A BASIS FOR THE DECISION

■ LIHI also argues that the Board "never addressed the issue of whether the City's Plan actually meets its identified housing needs as required under section 2 of Pierce County's CPP." Br. of Appellant at 32. Again we agree. The Board made no findings regarding the City's current need or how the Plan will affect the future availability of affordable housing.

Instead, the Board summarily ruled that LIHI failed to carry its burden to show inconsistency between the provisions of Lakewood's Plan and the requirements of the Pierce County CPP. Comprehensive plans are presumed

valid upon adoption (*see* RCW 36.70A.320). But where, as here, the Board presents no basis for its decision, we cannot review its analysis. It has failed to decide all issues requiring resolution as required by RCW 36.70A.290(1) and the APA (specifically RCW 34.05.570(3)(f)).

It is not clear whether the Board simply discounted the concerns articulated in the FEIS (e.g. that the City could lose approximately 868 housing units if the two neighborhoods in question turned industrial and that 1,604 affordable housing units will be needed by 2017 for "people earning under 95% of the county median income" (AR at 1100)), or whether LIHI failed to prove that these projections applied to the Plan as adopted. These projections appear in a section of the FEIS called "Preferred Alternative." *See* AR at 1099. Other sections are "No Action Alternative" and "Mixed-Use Alternative." *See* AR at 1101-02. Presumably, the preferred alternative is the one that matches the Plan, but that is not evident from the parties' briefing or the Board's order. The City claims that changes were made to the Plan in order to accommodate the FEIS housing concerns. But without a Board finding, we cannot assume that these additions were made or that they sufficiently address the concerns of the FEIS.

Because we cannot review the Board's analysis on issue number 11 under the summary order presented, we remand for more thorough findings and articulation of the basis for the ruling.

ERROR OF LAW

Moreover, the Board erred as a matter of law when it evaluated only the first requirement of the CPP (identify/inventory the demand for affordable housing) in determining Lakewood's compliance with the requirement that the Plan be consistent with the CPP and omitted the second (meet the need) requirement.

Arguably, Lakewood satisfied Pierce County's CPP requirement that the City provide an inventory and analysis of housing demands. But providing such inventory and analysis fulfills only part of the CPP's requirements.

The CPP requires that a city shall meet the projected need through use of one or more of limited and specified methods:

1. The County, and each municipality in the County, *shall determine the extent of the need* (*i.e.,* the demand) for housing for all economic segments of the population that are projected for the community over the planning period.

   . . . .

2. The County and each municipality in the County *shall meet their projected demand for housing* by one or more or all of the following:

   2.1 *preservation of the existing housing stock* through repair and maintenance, rehabilitation and redevelopment;

   2.2 *identification of vacant, infill parcels* appropriately zoned for residential development with assurances that neighborhood compatibility and fit will be maintained through appropriate and flexible zoning and related techniques . . . .

      . . . .

   2.3 *identification of other vacant lands suitable for residential development* and permitting sufficient land through zoning to meet one or more or all of the following types and densities, of housing: [multifamily, mixed use, cluster development, planned unit development, non-traditional housing].

   2.4 In determining the suitability of the location and identification of sites for affordable housing, the jurisdictions shall consider the availability and proximity of transit facilities, governmental facilities and services and other commercial services necessary to complement the housing.

AR at 1742-43 (emphasis added).

On this record, Lakewood did not demonstrate which of the approved methods outlined in the CPP (2.1, 2.2, or 2.3) its Plan would use to satisfy the projected need for affordable housing nor is it obvious in this record that it does so. Because the Plan did not identify other vacant or infill

lands and required destruction rather than preservation of existing housing stock, it appears that the Lakewood methodology for satisfying the projected affordable housing shortfall is to provide jobs for residents of low-income housing and eliminate the need for such housing within Lakewood's city limits. Whatever the merits of such a plan, it is incumbent on the Board to determine whether it is consistent with the planning policies of the county as a whole, as set forth in the CPP, and we remand for the Board to make such determination.

SUPPLEMENTING THE RECORD

LIHI also appeals the superior court's denial of its motion to supplement the record with the DNS.

■ A reviewing court may receive additional evidence that was not included in the agency record:

> only if it relates to the validity of the agency action at the time it was taken and is needed to decide disputed issues regarding:
>
>> (a) Improper constitution as a decision-making body or grounds for disqualification of those taking the agency action;
>>
>> (b) Unlawfulness of procedure or of decision-making process; or
>>
>> (c) Material facts in rule making, brief adjudications, or other proceedings not required to be determined on the agency record.

RCW 34.05.562(1).

Because a DNS is created in the development regulations process, which was not completed at the time of LIHI's initial challenge, and not during the comprehensive plan process, it is unlikely that the DNS would have been relevant to the Board's decision. None of the other reasons for allowing additional evidence under RCW 34.05.562 apply, and the trial court did not err in denying LIHI's motion to supplement the record.

Reversed and remanded to the Board for further proceedings consistent with this opinion.

SEINFELD and HOUGHTON, JJ., concur.