[No. 37865-5-II.   Division Two.   December 15, 2009.]

YAKIMA POLICE PATROLMEN'S ASSOCIATION, *Appellant*, v. THE CITY OF YAKIMA, *Respondent*.

*James M. Cline* (of *Cline & Associates*), for appellant.

*Bruce L. Schroeder* and *Elizabeth Rose Butler Kennar* (of *Summit Law Group PLLC*), for respondent.

¶1 VAN DEREN, C.J. — The Yakima Police Patrolmen's Association (Association) filed an unfair labor practice (ULP) complaint with the Public Employment Relations Commission (PERC) against the city of Yakima (City), arguing that the termination of Yakima Police Officer Michael Rummel constituted unlawful domination of the Association as well as discrimination and interference with protected union activities. The hearing examiner rejected the domination claim but found that the City discriminated against Rummel and committed a derivative interference with collective bargaining rights. The City appealed and PERC reversed the examiner and dismissed the complaint. The Association appealed that dismissal and the Thurston County Superior Court affirmed the PERC decision. The Association now appeals the superior court's order enforcing the PERC decision and dismissing its appeal. We affirm.

## FACTS

### I.   RUMMEL MISCONDUCT 2002-2004

¶2 In August 2002, Yakima police officers stopped Rummel for driving under the influence of alcohol while he was off duty. Rummel acted in a noncompliant manner and the officers escorted him home; they warned him not to operate a vehicle under his current state of intoxication.

That same evening, Yakima officers again observed Rummel driving and he was charged with driving under the influence of alcohol.

¶3 After an internal investigation determined that Rummel's actions violated several employer policies, Rummel signed a "Last Chance Employment Agreement" requiring him to abide by several conditions, including evaluation and treatment for substance abuse and an agreement to "comply with any and all Yakima Police Department Policy and Procedures and Yakima Police Civil Service Rules." Administrative Record (AR) at 631-32. The last chance agreement had a three year term and it stated in bold the consequences of its violation:

> **It is expressly understood and agreed by the City, Employee, and the [Association] that should Employee fail to fully comply with any of the terms and conditions stated herein, his employment with the City of Yakima shall be terminated.**

AR at 632.

¶4 In late 2004, Stacey Unglesby's supervisor filed a complaint alleging that Rummel had made several harassing phone calls to Unglesby at work. Unglesby worked for the City as a "911 call taker" and was dating Rummel. AR at 255. After Unglesby's supervisor listened to recordings of the calls, he felt that Rummel was potentially suicidal. Captain Greg Copeland, Rummel's immediate supervisor, took steps to have Rummel undergo a mental health evaluation.

¶5 "On October 31, 2004, Yakima police officers responded to reports of a domestic dispute at Rummel's apartment involving Rummel and Unglesby." AR at 927. The two had argued at a Halloween party and Rummel refused to allow Unglesby into his apartment to retrieve her keys. Police Lieutenant, then Police Sergeant, Nolan Wentz accompanied Unglesby into the apartment and observed Rummel loading a shotgun. Wentz and Unglesby left the apartment immediately and contacted Copeland. When

Copeland arrived, he could tell that Rummel was intoxicated. During a meeting the next day, Copeland ordered Rummel not to have any contact with Unglesby. Copeland interviewed Unglesby on December 7 about a possible violation of that no-contact order and learned that Rummel had contacted her at work on December 6.

¶6 Before the City could investigate that contact, Rummel's physician advised Copeland that Rummel was having difficulty eating and sleeping and needed leave time from work. After Copeland and Yakima Police Chief Samuel Granato met with Rummel on December 10, the City placed Rummel on administrative leave and ordered him to undergo a psychiatric evaluation. Dr. Kathleen Decker evaluated Rummel on December 20 and advised that he was not fit for duty because he suffered from major depression and alcohol abuse. She recommended that he remain on leave for 4-6 weeks, take medication and refrain from alcohol usage, and be reevaluated at the end of the leave period. When Dr. Decker reevaluated Rummel on February 17, 2005, she found him fit for duty but recommended that he undergo 90 days of random urinalysis testing.

## II. Dahl Complaint

¶7 Meanwhile, on February 16, 2005, the Association filed an ULP complaint against the City regarding Yakima Police Officer Brian Dahl. Dahl had admitted an addiction to prescription drugs in the summer of 2004 and Dr. Decker recommended that he be subject to six months of random urinalysis as a condition of returning to duty. The drug policy then in place allowed mandatory random testing based only on a reasonable suspicion of drug abuse. The City met with Dahl and some association representatives to go over the reinstatement order incorporating Dr. Decker's conditions, but the Association did not want to set a precedent regarding random drug testing and wanted to negotiate a policy for future situations. Granato told the Association that it was not his intention to use the Dahl reinstatement order as precedent to implement random drug

testing and that he understood that the parties would be addressing the issue during upcoming contract negotiations. In its ULP complaint, the Association charged that the City had "unilaterally changed its drug testing policy, without providing the union with an opportunity to bargain." AR at 779. It also alleged that the City engaged in improper direct dealing with Dahl.[1]

### III. Rummel Negotiations and 2005 Misconduct

¶8 After the City received Dr. Decker's conditions for Rummel's return to work, it discussed with the Association how to put her recommendations into effect. The City did not want to face a second ULP charge in following Dr. Decker's instructions regarding random alcohol testing for Rummel. An Association representative, Yakima Police Officer Shawn Boyle, proposed that if the City agreed not to use the individual reinstatement agreements against the Association as some kind of precedent in bargaining, the Association would drop its ULP charge based on the Dahl case. The Association agreed to develop a proposal that would allow Rummel to be tested. While the City was waiting for the Association's proposal, Copeland finished his investigation into Rummel's alleged violation of his no-contact order in December 2004 and sustained the insubordination charge.

¶9 Association President Robert Hester delivered a proposed agreement regarding Rummel's random urinalysis testing to Copeland on April 4. The proposal agreed that Rummel's reinstatement would be subject to 90 days of random alcohol testing, reiterated that this testing did not create a department-wide policy or establish any precedent,

---

[1] PERC ultimately held that the City did not circumvent the Association when it discussed the terms of the reinstatement order with Dahl and that the City did not refuse to bargain the terms of the order. But PERC also concluded that, as soon as the City expressed a desire for a random drug testing policy that covered all bargaining unit employees and the Association responded with a proposal, the City was obligated to bargain. *Yakima Police Patrolmen's Ass'n v. City of Yakima*, No. 19206-U-05-4822, 2008 WL 2002002 (Wash. Pub. Emp't Relations Comm'n Apr. 25, 2008).

and stated that the agreement would have no effect on the Dahl complaint. Although Granato felt the agreement was inconsistent with what the parties had discussed, he forwarded it to the City's legal office for review. At that time, Granato was trying to get Rummel back to work.

¶10 Rummel injured his hand in March, which further delayed his return to work, and "[o]n April 1, 2005, [he] was accused of using his police badge to enter a bar without paying the cover charge, a violation of the Yakima Police Code of conduct which prohibits officers from using their badge for monetary gain." AR at 929. After an investigation, the City concluded that Rummel violated an employer policy.

¶11 Copeland reviewed Rummel's investigative file in early May and recommended termination in a document signed on May 2, 2005. Granato signed the document on the same day with the same recommendation but asked for further investigation before he made a final decision. On May 27, Granato met with three Association members for a labor/management meeting.[2] During that meeting, Hester inquired about the status of pending internal investigations, including Rummel's case. The parties offer differing versions of Granato's response.

¶12 Granato testified that he attempted to explain the delay in addressing Rummel's status by reminding the Association that it had promised to propose language incorporating Dr. Decker's recommendation for alcohol testing without triggering another ULP charge as well as language addressing the Dahl charge. Granato explained that he had done his best to keep Rummel on while waiting for the proposed language and that the proposal he received in April did not reflect the resolution the Association initially offered. He reminded the Association that Rummel had hurt his hand and again gotten into trouble. He explained that he had been sticking his neck out for Rummel and was

---

[2] Granato was the only management representative present; the three Association members were Hester, Michael Lindgren, and Jay Seely.

"not going to keep sticking it out there." AR at 436. Granato did not disclose that he was leaning toward recommending termination, but he did say it was not looking good for Rummel based on the information Granato had at that point.

¶13 Hester and Association Vice President Michael Lindgren, who also attended the May 27 meeting, testified that Granato said he was going to fire Rummel because the Association had not dropped the Dahl ULP charge.

## IV. RUMMEL TERMINATION AND APPEALS

¶14 The City provided Rummel with notice of its intent to terminate his employment on June 2 and held a pretermination hearing on June 16, 2005.[3] Based on points the Association raised about the April 1 incident at that meeting, Granato directed the investigator to conduct further interviews. That investigation did not change the City's assessment and the City terminated Rummel on July 5, 2005 based on his violation of the last chance agreement.

¶15 The Association filed an ULP charge with PERC as well as a grievance on Rummel's behalf. An arbitrator initially sustained the grievance, but the City appealed, and the trial court set aside the arbitrator's decision and held that the City acted within its rights in terminating Rummel's employment. Division Three recently affirmed and upheld the City's termination decision under the terms of the last chance agreement. *City of Yakima v. Yakima Police Patrolman's Ass'n*, 148 Wn. App. 186, 199 P.3d 484 (2009).[4]

¶16 The PERC hearing examiner rejected the Association's contention that the City attempted to dominate the

---

[3] The administrative record provides two different dates for the pretermination hearing, June 10, 2005 and June 16, 2005. We use the June 16, 2005 date because that is the date of the Yakima police detail report.

[4] Division Three found that the arbitrator's factual determination that Rummel had not misused his position on April 1 was not reviewable, but it also found that the arbitrator's determination that Rummel violated the no-contact order by calling Unglesby constituted violation of the last chance agreement and was grounds for termination. *City of Yakima*, 148 Wn. App. at 196-97.

union but found that the City had discriminated against Rummel and committed a derivative interference with collective bargaining rights in violation of RCW 41.56-.140(1) and (3). *Yakima Police Patrolmen's Ass'n v. City of Yakima*, No. 19741-U-05-4998, 2006 WL 3289254 (Wash. Pub. Employment Relations Comm'n Oct. 20, 2006) (corrected findings of fact, conclusions of law, order). The examiner ordered the City to cease and desist from discriminating against its employees in reprisal for their union's filing of ULP complaints, to refrain from interfering with its employees in the exercise of their collective bargaining rights, and to reinstate Rummel with back pay and benefits due from the date of the unlawful discharge. *Yakima Police Patrolmen's Ass'n*, 2006 WL 3289254, at *9.

¶17 The City appealed and PERC reversed, finding insufficient evidence to support the Association's charges. *Yakima Police Patrolmen's Ass'n v. City of Yakima*, No. 19741-U-05-4998, 2007 WL 1666668, at *1 (Wash. Pub. Employment Relations Comm'n May 9, 2007) (decision of commission). PERC adopted all but two of the examiner's findings of fact. *Yakima Police Patrolmen's Ass'n*, 2007 WL 1666668, at *1. PERC concluded that the City did not retaliate for the union's filing of an ULP complaint when it implemented Rummel's last chance agreement and it dismissed the complaint. *Yakima Police Patrolmen's Ass'n*, 2007 WL 1666668, at *4. The Association filed a petition for review and the Thurston County Superior Court entered an order enforcing PERC's decision. The Association then appealed to this court. After the opening briefs were filed, Rummel committed suicide.

## ANALYSIS

### I. Mootness

¶18 The Association argues in its reply brief that this case is not moot, despite Rummel's recent death, because the labor discrimination issues involving Chief Granato are too important to ignore. It acknowledges that any relief in

the form of reinstatement is futile but contends that a resolution on the merits is needed because of Granato's continued potential for serious workplace discrimination.

¶19 A case is moot if we can no longer provide meaningful relief. *BBG Grp. LLC v. City of Monroe*, 96 Wn. App. 517, 521, 982 P.2d 1176 (1999). The Association is the complainant in the ULP complaint and, although the hearing examiner granted relief specific to Rummel in ordering his reinstatement, the examiner also granted the Association relief by ordering the City to cease discriminating against and interfering with the labor rights of its employees. Furthermore, in granting Rummel reinstatement, the examiner also ordered the City to pay him back pay and benefits. This compensation could pass to his estate if the Association were to prevail. Because meaningful relief is possible despite Rummel's death, this case is not moot.

II.   THE ASSOCIATION'S DISCRIMINATION CLAIM

A. Standard of Review

¶20 Judicial review of a final administrative decision is governed by the Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW. *Chandler v. Office of Ins. Comm'r*, 141 Wn. App. 639, 647, 173 P.3d 275 (2007), *review denied*, 163 Wn.2d 1056 (2008). In reviewing administrative action, "this court sits in the same position as the superior court, applying the standards of the WAPA directly to the record before the agency." *Tapper v. Emp't Sec. Dep't*, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). This court applies a substantial evidence standard to an agency's findings of fact but reviews de novo its conclusions of law. *Premera v. Kreidler*, 133 Wn. App. 23, 31, 131 P.3d 930 (2006).

¶21 Because PERC is entitled to substitute its findings for those of the hearing examiner, it is the PERC findings that are relevant on appeal. *City of Federal Way v. Pub. Emp't Relations Comm'n*, 93 Wn. App. 509, 511-12, 970 P.2d 752 (1998). This court "review[s] chal-

lenges to the factual findings for substantial evidence in light of the whole record, i.e., evidence sufficient to persuade a fair-minded person of their truth." *City of Federal Way*, 93 Wn. App. at 512. The substantial evidence standard is deferential; it does not permit a reviewing court to substitute its view of the facts for that of the agency if substantial evidence is found. Washington Administrative Law Practice Manual § 10.05[C][3], at 10-29 (2008).

¶22 "Reviewing courts may grant relief only if the party challenging the agency order shows that the order is invalid for one of the reasons set forth in RCW 34.05-.570(3)." *Chandler*, 141 Wn. App. at 647. The Association argues that PERC erroneously interpreted and applied the law in dismissing its discrimination claim and that substantial evidence does not support its decision. *See* RCW 34.05.570(3)(d), (e) (requiring court to grant relief from agency decision if agency erroneously interpreted or applied the law, or if the order is not supported by substantial evidence).

B. PERC's Analysis

1. Legal Standard

¶23 "Chapter 41.56 RCW prohibits public employers from interfering with or discriminating against the exercise of the rights secured by the collective bargaining statute." *Int'l Ass'n of EMTs & Paramedics v. Grant Cnty. Pub. Hosp. Dist. 1*, No. 13514-U-97-3300, 1999 WL 1338343, at *2 (Wash. Pub. Emp't Relations Comm'n Dec. 14, 1999); *see* RCW 41.56.040 ("No public employer, or other person, shall . . . discriminate against any public employee . . . in the free exercise of the right to organize and designate representatives of their own choosing for the purpose of collective bargaining, or in the free exercise of any other right under this chapter."). These rights are enforced through the ULP provisions of the chapter, which specify that it is an ULP for a public employer to discriminate against a public employee who has filed an ULP

charge. RCW 41.56.140(3). The City is a public employer and Rummel was a public employee. RCW 41.56.030(1), (2).

> A discrimination violation occurs under Chapter 41.56 RCW when an employer takes action which is substantially motivated as a reprisal against the exercise of rights protected by Chapter 41.56 RCW . . . .

> A complainant has the burden to establish a prima facie case of discrimination, including that: (1) the employee has participated in protected activity or communicated to the employer an intent to do so; (2) the employee has been deprived of some ascertainable right, benefit or status; and (3) there is a causal connection between those events.

> If a prima facie case is made out, the employer has the opportunity to articulate legitimate, nonretaliatory reasons for its actions.

*Pub. Sch. Emps. of Reardan-Edwall v. Reardan-Edwall Sch. Dist.*, No. 12593-U-96-2997, 1998 WL 1056978, at *6 (Wash. Pub. Emp't Relations Comm'n Sept. 29, 1998); *Wilmot v. Kaiser Aluminum & Chem. Corp.*, 118 Wn.2d 46, 71-73, 821 P.2d 18 (1991). The employer does not have the burden of proof on its legitimate, nonretalitory reasons for its actions. *Bonds v. Port of Tacoma*, No. 8702-U-90-1898, 1995 WL 854141, at *11 (Wash. Pub. Emp't Relations Comm'n June 20, 1995). Once the employer provides legitimate reasons for its action, the complainant must prove, by a preponderance of the evidence, that the disputed action was in retaliation for the employee's exercise of statutory rights. This may be done by showing that the employer's reasons were a pretext or by showing that union animus was nevertheless a substantial motivating factor behind the employer's actions. *Pub. Sch. Emps. of Reardan-Edwall*, 1998 WL 1056978, at *6; *Wilmot*, 118 Wn.2d at 71-73.

¶24 PERC correctly cited this standard in its decision. *Yakima Police Patrolmen's Ass'n*, 2007 WL 1666668, at *1-2. It then summarized the history of Rummel's difficulties as well as the Dahl ULP charge, which accused the City of breaching its good faith bargaining obligation by failing

to meet regarding a random drug testing policy. PERC agreed with the examiner that the Association produced enough evidence to establish a prima facie case of discrimination:

> It is clear from this record that, according to the union, it exercised its right to file an unfair labor practice complaint under Chapter 41.56 RCW, and in retaliation for pursuit of those protected rights, Granato informed the union at the May 2005 labor/management meeting that he was going to discharge Rummel under the "Last-chance" agreement. According to the union, Granato wanted the union to drop its unfair labor practice complaint.

*Yakima Police Patrolmen's Ass'n*, 2007 WL 1666668, at *3.

¶25 PERC also found, as had the examiner, that the City articulated nondiscriminatory reasons for implementing the last chance agreement and terminating Rummel. The City argued that Rummel violated the agreement when he disobeyed the no-contact order in December 2004 and when he used his police badge for personal gain in April 2005, and that these violations of its code of conduct and policies warranted Rummel's termination. *Yakima Police Patrolmen's Ass'n*, 2007 WL 1666668, at *3. But PERC disagreed with the examiner's conclusion that the Association satisfied its ultimate burden of proof that union animus was a substantial motivating factor for implementing the last chance agreement. *Yakima Police Patrolmen's Ass'n*, 2007 WL 1666668, at *4.

¶26 As the superior court recognized, our responsibility in reviewing the PERC decision is to not weigh the evidence and decide what did or did not happen. Rather, we must determine whether there was substantial evidence to support the facts as found by PERC.

### 2. PERC Disagreements with Examiner

¶27 PERC noted that the examiner found that the City offered to reinstate Rummel in March 2005.[5] Based on that offer, the examiner inferred that the City did not consider the April 2005 badge incident to be a serious matter, particularly in light of the more serious October 2004 phone harassment and December 2004 insubordination incidents. *Yakima Police Patrolmen's Ass'n*, 2007 WL 1666668, at *5. PERC observed that the badge incident occurred after the City made its March 2005 offer to reinstate Rummel; "[t]hus, the Examiner's inference that the employer did not consider the badge incident a violation of the 'Last-chance' agreement was not supported by substantial evidence." *Yakima Police Patrolmen's Ass'n*, 2007 WL 1666668, at *4.

¶28 Substantial evidence supports PERC's assessment of the record regarding the impact of the badge incident on Rummel's reinstatement. Granato testified that, after the December 2004 incident, he intended to get Rummel back to work. Even after he received the Association's proposal and was told that it would not drop the Dahl ULP complaint, he still was working for Rummel's reinstatement. But after he learned of the investigation of the April 1 badge incident, Granato changed his mind about retaining Rummel: "This was the straw that broke the camel's back." AR at 433. Copeland also testified that the City's goal was to return Rummel to work but that his hand injury in March and the badge incident in April prevented that return. After reviewing the investigation into that incident, Copeland recommended Rummel's termination under the last chance agreement and Granato agreed with that recommendation. The officer who put together the last chance agreement in 2002 testified that he had assured Rummel that, while the agreement would not be used to nitpick, its application would not be limited to alcohol-related offenses.

---

[5] The examiner's finding stated, "On March 17, 2005, the City of Yakima requested a proposal from the union that would allow it to reinstate Rummel to work, subject to alcohol testing." *Yakima Police Patrolmen's Ass'n*, 2007 WL 1666668, at *10.

¶29 Association President Hester thought that a 20-30 hour suspension would be an appropriate penalty for each of Rummel's transgressions and Rummel testified that Lieutenant Wentz, the officer who investigated the April 1 incident, told him he had done nothing wrong. Rummel also testified that he never would have signed the last chance agreement had he not been assured that it would apply only to future alcohol-related offenses.

¶30 Wentz did not testify but Copeland offered testimony that Wentz was a relatively new officer who did not have much experience in termination cases. The hearing examiner reasoned that Wentz's assurance to Rummel supported the inference that the City did not consider the badge incident a violation of the last chance agreement. But the examiner entered the following finding of fact, which the Association did not challenge: "On December 6, 2004, and April 1, 2005, Rummel was involved in separate incidents that the City of Yakima found to constitute insubordination and unauthorized use of the police badge, both violations of employer policies." *Yakima Police Patrolmen's Ass'n*, 2006 WL 3289254, at *8. Thus, while the Association presented testimony to support its position that the April 1 incident did not justify termination under the last chance agreement, the two witnesses for the City viewed the badge incident as a violation of that agreement and the examiner so found. Substantial evidence supports PERC's conclusion that the City considered the badge incident a violation of the last chance agreement.

¶31 In concluding that union animus was not a substantial motivating factor behind Rummel's termination, PERC also found that the examiner failed to consider Copeland's testimony. It observed that after reviewing the investigation report about the April 1 badge incident, "Copeland independently recommended to Granato that Rummel be terminated. Copeland testified that he considered the incident a breach of the 'Last-chance' agreement, and testified that union activities did not factor into his decision." *Yakima Police Patrolmen's Ass'n*, 2007 WL 1666668, at *4.

¶32 The Association argues that Copeland's recommendation was not independent and was made only after he discussed the matter with Granato. Copeland admitted that he and Granato discussed Rummel before Copeland made his termination recommendation, but he also stated that Granato did not instruct him to terminate Rummel and did not mention the Dahl complaint. He added that he and Granato agreed that Rummel's termination was appropriate because of the officer's misconduct. The evidence supports PERC's evaluation of Copeland's recommendation.

¶33 PERC also disagreed with the examiner about how Granato's frustrations with the union affected his treatment of Rummel. The examiner found that he could not "construe Granato's comments [at the May 27 labor/management meeting] merely as an expression of frustration over the lack of a means to reinstate Rummel because the union had proposed to submit Rummel to random alcohol testing, which would have foreclosed a second ULP complaint."[6] *Yakima Police Patrolmen's Ass'n*, 2006 WL 3289254, at *6. The examiner noted that "Granato indicated he was disappointed that the [Association] had not fulfill[ed] its promise to withdraw the first complaint" and the examiner concluded that this failure substantially motivated Rummel's termination. *Yakima Police Patrolmen's Ass'n*, 2006 WL 3289254, at *13.

¶34 PERC found that Granato's frustration about the Association's failure to withdraw the Dahl complaint did not by itself constitute evidence of his intent to discriminate against Rummel. *Yakima Police Patrolmen's Ass'n*, 2007 WL 1666668, at *4. PERC reasoned that Granato's frustration was more closely associated with the bargaining process and did not reflect an intent to discriminate against protected employee rights. *Yakima Police Patrolmen's Ass'n*, 2007 WL 1666668, at *4.

---

[6] It is not self-evident that the Association's proposal would have barred future complaints concerning Rummel's reinstatement.

¶35 Granato's frustrations, and the manner of their expression at the May 27 labor/management meeting, are at the heart of the Association's discrimination claim. We next examine the record to determine whether substantial evidence supports PERC's analysis of Granato's statements during that meeting.

### 3. May 27 Meeting and Evidence of Union Animus

¶36 The Association contends that its version of the May 27 meeting shows that union animus was the key motivation behind Rummel's termination. Hester and Lindgren testified that, when asked about Rummel's status, Granato replied that Rummel would be fired if the Dahl ULP charge was not dropped.[7]

¶37 Granato testified that he brought up the ULP charge to explain the delay in reinstating Rummel after Dr. Decker had cleared him for return to duty in February. Granato said he reminded the Association that it had promised to provide an agreement concerning Rummel's drug testing so the City could get him back to work "and not get another ULP filed on us and to have the other ULP dropped." He told the Association that he had waited for the agreement and when he got it, "You all didn't drop the ULP, that's fine." Granato added, "But then Rummel hurts his hand and then he goes and gets in trouble again." AR at 436. Granato told the Association that he was not going to keep sticking his neck out for Rummel and that it was not looking good for Rummel, based on what Granato knew then. Granato admitted on cross-examination that he was disappointed the Association had not dropped the ULP charge but added that the only connection between it and Rummel was that the City wanted an agreement so that it would not get another ULP complaint when it sought random drug test-

---

[7] The third Association member present, Jay Seely, testified for the City that he did not remember such a remark by Granato. But on cross-examination, Seely's testimony was inconsistent. He stated that he could not recall Granato's statement but then admitted he had acknowledged the remark when Hester mentioned it to other officers after the May 27 meeting. Seely was a conflicted witness who tried to avoid testifying.

ing for Rummel. Granato again asserted that Officer Boyle had said, as Boyle confirmed, that the Association had agreed to drop the Dahl complaint if the City did not use the individual reinstatement agreements against the Association in bargaining.

¶38 The Association contends that it was inappropriate to bring up the Dahl ULP complaint in the context of Rummel's retention because the parties had agreed to separate the two issues. The two issues were connected, however, as the superior court observed:

> While it is unfortunate the two issues were discussed in the same conversation, this fact does not establish a discriminatory motive. The two issues are connected. The presence of the unfair labor practice charge involving Dahl made it difficult, if not impossible, for the Department to subject Officer Rummel to some type of random monitoring. The parties understood the two issues were connected as demonstrated by the conversations they had related to the two situations.

Clerk's Papers at 14-15.

¶39 Remarks Granato made at the May 27 meeting did not prompt any further discussion at that meeting and were not mentioned at Rummel's pretermination meeting on June 16. Moreover, Granato did not make a termination decision immediately after that meeting but, rather, ordered a further investigation into the April 1 incident, supporting PERC's conclusion that Rummel was terminated based on his misconduct rather than union animus.

¶40 The Association argues that PERC ignored much of the evidence in the record regarding Granato's union animus. The witnesses for the Association testified about the contentious relationship between Granato and Association President Hester as well as Granato's alleged reluctance to engage in collective bargaining. Granato confirmed that his relationship with Hester was adversarial in nature and admitted that he had considered disciplining Hester for filing unfounded grievances.

¶41 The issue, however, is whether substantial evidence supports PERC's conclusion that union animus was not a

substantial motivating factor behind Rummel's termination. *See Wash. State Council of Cnty. & City Emps., Local 275 v. Aberdeen Sch. Dist.*, No. 13386-U-97-3266, 1998 WL 828150, at *9 (Wash. Pub. Emp't Relations Comm'n Sept. 28, 1998) (even if evidence showed that union animus was motivating factor in employee's discharge, union failed to prove that animus was substantial motivating factor in employer's action, so discharge did not constitute discrimination); *see also In re Wash. State Council of Cnty. & City Emps. v. City of Federal Way*, No. 9655-E-92-1590, 1993 WL 833184, at *29 (Wash. Pub. Emp't Relations Comm'n Sept. 15, 1993) (although timing and context of discharges was suspect, employees did commit misconduct, and fact that another employer might have imposed lesser penalty does not show ULP was committed). An order supported by substantial evidence can be upheld even if the record contains contrary evidence. The question is what does the " 'whole record' " show. Washington Administrative Law Practice Manual § 10.05[C][3], at 10-28. PERC's conclusion that Rummel's misconduct was the primary impetus behind his termination withstands scrutiny. We hold that PERC did not erroneously interpret or apply the law and its decision is supported by substantial evidence.

## III. PERC's Resolution of Necessary Issues

### A. Findings of Fact

¶42 The Association also argues that PERC failed to decide all issues required. *See* RCW 34.05.570(3)(f) (court shall grant relief if agency has not decided all issues requiring resolution). Because PERC failed to enter findings of fact regarding the City's motivation in terminating Rummel after it struck two of the examiner's findings, the Association contends that it is impossible to know what PERC determined regarding the nature of Granato's threats or how they affected the termination decision. The Association also alleges that, by striking two of the exam-

iner's findings of fact, PERC failed to give due deference to the examiner's opportunity to observe the witnesses. *See* RCW 34.05.464(4) (reviewing officers shall give due regard to presiding officer's opportunity to observe witnesses).[8]

¶43 The WAPA provides that "[i]nitial and final orders shall include a statement of findings and conclusions, and the reasons and basis therefor, on all the material issues of fact, law, or discretion presented on the record." RCW 34.05.461(3). An agency's findings of fact are subject to the same requirements as those by a trial court. *Weyerhaeuser v. Pierce County*, 124 Wn.2d 26, 35, 873 P.2d 498 (1994). "Their purpose is to ensure that the decision-maker has dealt fully and properly with all of the issues in a matter before deciding it." WASHINGTON ADMINISTRATIVE LAW PRACTICE MANUAL § 9.06[B][3][a] at 9-39; *Weyerhaeuser*, 124 Wn.2d at 35. "[F]ormal findings of fact serve an important function for meaningful judicial review[and t]he absence of clearly stated findings of fact . . . give[s] the reviewing court the responsibility to determine what facts actually were found by the agency." WASHINGTON ADMINISTRATIVE LAW PRACTICE MANUAL § 9.06[B][3][a] at 9-39. "[A] reviewing court will not weigh credibility and will not substitute its judgment for that of the agency." WASHINGTON ADMINISTRATIVE LAW PRACTICE MANUAL § 9.06[B][3][a] at 9-40. But the absence of a finding of fact in favor of the party with the burden of proof as to a disputed issue is the equivalent of a finding against the party on that issue. *Ellerman v. Centerpoint Prepress, Inc.*, 143 Wn.2d 514, 524, 22 P.3d 795 (2001); *City of Spokane v. Dep't of Labor & Indus.*, 34 Wn. App. 581, 589, 663 P.2d 843 (1983).

¶44 The Association presented the same complaint about PERC's findings of fact to the superior court, which observed that the findings of both the examiner and PERC "leave something to be desired." Report of Proceedings (RP) at 49. The trial court noted that in trying to understand

---

[8] Under the WAPA, "[t]he presiding officer oversees the hearing and initial order, while the reviewing officer reviews the order." *Jackstadt v. Wash. State Patrol*, 96 Wn. App. 501, 508, 976 P.2d 190 (1999) (footnote omitted).

both sets of findings and conclusions, it had been required to look to the body of the decisions, which it did not find unusual. The trial court did not think it prudent to remand for clearer findings because the underlying facts were then almost three years old and the parties needed resolution. The trial court found a legitimate connection between the Dahl complaint and Rummel's termination, based on the need for random drug testing for Rummel. The court noted further:

> There was ultimately, in May of 2005, a discussion of the [Dahl and Rummel] situations that the union interpreted as a threat to use the Rummel termination as a way of getting the Association to withdraw the Dahl unlawful labor practice charge. . . . I would accept the proposition set forth in the *Ellerman*[, 143 Wn.2d 514] case that the failure to make a critical finding in favor of a party essentially means that the party has not sustained its burden of proof on that issue. And so I understand the Commission's decision as determining that the Association failed to sustain its burden on the issue of whether Officer Rummel was fired in retaliation for the failure of the union to withdraw its unlawful labor charge.

RP at 51-52.

¶45 As noted earlier, key to the Association's charge of retaliation is Granato's alleged statement at the May 27 meeting that he would terminate Rummel if the Association did not withdraw the Dahl ULP. The examiner described Granato's testimony regarding his statements during the May 27 meeting and noted that the Association had offered a different, more confrontational, version of those comments. *Yakima Police Patrolmen's Ass'n*, 2006 WL 3289254, at *13. The examiner did not enter a finding that Granato threatened to terminate Rummel if the Dahl complaint was not withdrawn, however, and the Association did not file a cross appeal complaining of that omission. The examiner's finding concerning the May 27 meeting stated that

> Granato commented that the union had delayed delivering a proposal that would allow Rummel to resume work, and that the proposal had not included withdrawing the first unfair

labor practice complaint. Granato added that he accepted the union's refusal to withdraw the complaint described in paragraph 9 of these findings of fact, but that Granato could not continue to make himself vulnerable because Rummel had broken his hand and participated in the April 2005 incident described in paragraph 6 of these findings of fact.

*Yakima Police Patrolmen's Ass'n*, 2006 WL 3289254, at *9.

¶46 PERC struck this description of Granato's testimony as well as finding of fact 9, which described the charges in the "unrelated" Dahl ULP complaint.[9] *Yakima Police Patrolmen's Ass'n*, 2006 WL 3289254, at *8; *Yakima Police Patrolmen's Ass'n*, 2007 WL 1666668, at *4. PERC noted that, according to the Association, Granato stated at the May 27 meeting that he was going to discharge Rummel under the last chance agreement and wanted the union to drop the ULP complaint. *Yakima Police Patrolmen's Ass'n*, 2007 WL 1666668, at *3. PERC made no additional or separate finding concerning the May 27 meeting. PERC reasoned that, although Granato expressed frustration with the Association, that frustration was associated with the bargaining process and not intended to discriminate against protected employee rights. *Yakima Police Patrolmen's Ass'n*, 2007 WL 1666668, at *4. In short, PERC concluded that the Association's claim that Rummel's discharge was retaliation for protected union activity did not outweigh the nondiscriminatory reasons the City set forth for implementing Rummel's last chance agreement. *Yakima Police Patrolmen's Ass'n*, 2007 WL 1666668, at *4.

¶47 Thus, to the extent that PERC needed to determine the employer's motivation for Rummel's discharge, it did so. The examiner noted that the parties provided different testimony concerning the statements made at the May 27 meeting and did not accept one version over the other. We interpret PERC's similar failure to adopt the Association's version to mean that the Association did

---

[9] PERC found facts similar to the examiner's finding of fact 9 when it stated that the union filed a separate ULP complaint and then described the contents of that complaint. *Yakima Police Patrolmen's Ass'n*, 2007 WL 1666668, at *3.

not meet its burden of proof on the substantial motivating factor part of the discrimination test. Thus, PERC's decision stands and we need not grant relief under RCW 34.05.570(3)(f). *See Chevron U.S.A., Inc. v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 123 Wn. App. 161, 169, 93 P.3d 880 (2004) (relief warranted under RCW 34.05-.570(3)(f) only if board failed to resolve issue it was required to resolve and failure was prejudicial), *aff'd*, 156 Wn.2d 131, 124 P.3d 640 (2005); *Low Income Hous. Inst. v. City of Lakewood*, 119 Wn. App. 110, 118-19, 77 P.3d 653 (2003) (remanding case to Central Puget Sound Growth Management Hearings Board to decide unresolved issues).

B. Interference Claim

¶48 The Association further claims that PERC again failed to decide all required issues by giving only cursory attention to the Association's interference claim. *See* RCW 34.05.570(3)(f). In that claim, the Association alleged that the City interfered with its collective bargaining rights in violation of RCW 41.56.140(1).

¶49 "An employer commits an 'interference' violation under RCW 41.56.140(1) if it engages in conduct which can reasonably be perceived by employees as a threat of reprisal or force or a promise of benefit deterring them from pursuit of lawful union activity. A finding of 'intent' is not necessary to find a violation." *Teamsters, Local 882 v. King County*, No. 2955, 1988 WL 566683, at \*9 (Wash. Pub. Emp't Relations Comm'n June 15, 1988). "The test is whether the employer conduct reasonably tended to interfere with the free exercise by employees of their rights under the collective bargaining statute." *Int'l Union of Operating Eng'rs, Local 286 v. Metro. Park Dist. of Tacoma*, No. 5336-U-84-65, 1986 WL 327102, at \*5 (Wash. Pub. Emp't Relations Comm'n Jan. 9, 1986).

¶50 The finding of a discrimination violation under RCW 41.56.140(3) carries with it a derivative interference violation under RCW 41.56.140(1). *Teamsters Local 763 v. City of Snohomish*, No. 20656-U-06-5263, 2007 WL 453244, at \*1

(Wash. Pub. Emp't Relations Comm'n Jan. 24, 2007). "To establish an 'interference' violation under RCW 41.56-.140(1) independent from an alleged 'discrimination,' a complainant needs to establish that a party engaged in separate conduct which employees could reasonably perceive as a threat of reprisal or force or promise of benefit associated with their union activity." *Pub. Sch. Emps. of Reardan-Edwall*, 1998 WL 1056978, at *9. "Where a complaint alleging discrimination is dismissed, an independent interference violation cannot be found out of the same facts." *Kozlowski v. Clark County*, No. 18682-U-04-4748, 2007 WL 4111397, at *10 (Wash. Pub. Emp't Relations Comm'n Oct. 10, 2007); *see also Pub. Sch. Emps. of Reardan-Edwall*, 1998 WL 1056978, at *9 (declining to enter findings on interference claims after dismissing discrimination allegations arising out of same facts).

¶51 Here, the charges of discrimination and interference rested on the same set of facts, particularly Granato's alleged threats during the May 27 meeting. In its posthearing brief submitted to the examiner, the Association noted, in discussing its claim of discrimination, that the chief's "threats to discharge Rummel . . . are at the heart of this case." AR at 685. The Association ended the discrimination section by discussing the chief's statements at the May 27 meeting, and it stated in the interference section that "[b]ecause the Chief's May 27 statements could be and were reasonably perceived as a threat to the Association's statutory rights, an interference violation has occurred." AR at 704.

¶52 The examiner concluded that the finding that the City discriminated against Rummel entailed a derivative interference with collective bargaining rights. *Yakima Police Patrolmen's Ass'n*, 2006 WL 3289254, at *6. PERC noted that, where an allegation of discrimination is dismissed, an independent interference allegation cannot be found on the same facts and it, therefore, found no need to address whether any of the facts alleged constituted employer interference. *Yakima Police Patrolmen's Ass'n*, 2007

WL 1666668, at *1 n.2. The superior court found substantial evidence supporting PERC's finding that there was not sufficient independent evidence to support a separate interference claim.

¶53 We recognize that some PERC decisions have analyzed an interference claim even after dismissing a discrimination claim on the same facts. *See Mill Creek Police Guild v. City of Mill Creek*, No. 11333-U-94-2653, 1996 WL 686803, at *27, *29 (Wash. Pub. Emp't Relations Comm'n Oct. 10, 1996); *Paraprofessional Firefighters Ass'n of Mercer Island, Local 1726 v. City of Mercer Island*, No. 1580, 1983 WL 471398, at *4-5 (Wash. Pub. Emp't Relations Comm'n Feb. 14, 1983). But the Association's interference claim rests on unproven threats. Having found substantial evidence to support PERC's dismissal of the discrimination claim, we do not find substantial evidence to support an interference claim based on the same set of facts and allegations. Again, PERC's decision stands and we need not grant relief under RCW 34.05.570(3)(f).

C. Motion To Strike

¶54 The Association contends here that PERC erred in failing to address its motion to strike. In appealing the examiner's decision to PERC, the City attached to its brief declarations from the city manager and assistant city attorney that it had not submitted to the examiner. These declarations addressed the city manager's authority in terminating city employees as well as posthearing misconduct by Rummel. In its reply brief, the Association objected to the new arguments and moved to strike the declarations. After adding that it should be allowed to submit counter-declarations and address the merits of the new evidence, the Association proceeded to address those merits. The Association does not contend that PERC considered the challenged declarations in reaching its decision.

¶55 "[J]udicial review of disputed facts . . . must be confined to the agency record unless supplemented by additional evidence allowed by the [WAPA]." *US W.*

*Commc'ns, Inc. v. Utils. & Transp. Comm'n,* 134 Wn.2d 48, 72, 949 P.2d 1321 (1997); *see also* WAC 391-45-270(2) ("Once a hearing has been declared closed, it may be reopened only upon the timely motion of a party upon discovery of new evidence which could not with reasonable diligence have been discovered and produced at the hearing."). The court may receive evidence in addition to that in the agency record only if it relates to the validity of the agency action at the time it was taken and is needed to decide certain issues that are not relevant here. RCW 34.05.562(1).

¶56 The City does not attempt to justify its submission of the new materials but argues that the Association was not prejudiced thereby because PERC did not consider them. Where there has been no prejudice, no relief is warranted. *See Chevron U.S.A.*, 123 Wn. App. at 169 (plaintiff was not entitled to relief, despite board's failure to resolve issue, because it suffered no prejudice as a result of that failure). We find no reversible error in PERC's failure to expressly strike this evidence.

IV.  ARBITRARY AND CAPRICIOUS

¶57 The Association argues briefly that the PERC decision dismissing its discrimination and interference claims is arbitrary and capricious. *See* RCW 34.05.570(3)(i) (court shall grant relief if agency order is arbitrary and capricious); *City of Vancouver v. Pub. Emp't Relations Comm'n,* 107 Wn. App. 694, 710, 33 P.3d 74 (2001) (PERC's amended findings of fact were arbitrary and capricious because they were not supported by substantial evidence). It makes no new claims of error but contends that cumulative error requires reversal of PERC's decision. We reject this claim.

¶58 We conclude that substantial evidence supports PERC's decision that Rummel's violation of the last chance agreement, rather than union animus, was the substantial motivating factor behind his termination.

¶59 Affirmed.

HOUGHTON and BRIDGEWATER, JJ., concur.