FILED
COURT OF APPEALS
DIVISION II

2014 JAN 22 AM 9: 16

STATE OF WASHINGTON

BY_____
DEPUTY

# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| TEAMSTERS LOCAL UNION NO. 117, a Washington State labor organization, and PHYLLIS CHERRY, <br><br> Appellants, <br><br> v. <br><br> STATE OF WASHINGTON DEPARTMENT OF CORRECTIONS, Employer, and PUBLIC EMPLOYMENT RELATIONS COMMISSION, <br><br> Respondents. | No. 43604-3-II <br><br><br><br> PUBLISHED OPINION |

JOHANSON, J. — This is a case of first impression in which we are asked to determine whether chapter 41.80 RCW protects public employees' "concerted activities"[1] from employer interference, restraint, or coercion. We hold that Washington's public employee rights statute clearly does not protect public employees' "concerted activities." *Teamsters Local Union No.*

---

[1] "Concerted activities" are activities undertaken by employees, jointly with one another, for the purpose of improving their working conditions. *Bravo v. Dolsen Cos.*, 125 Wn.2d 745, 752, 888 P.2d 147 (1995). Unlike the federal National Labor Relations Act (NLRA), 29 U.S.C. §§ 151-169, which applies to *private* sector employees and expressly protects "concerted activities," Washington's *public* employee rights statute does not expressly protect public employees' "concerted activities," the category of conduct at issue here.

117 (Union) and Phyllis Cherry[2] appeal from a Public Employment Relations Commission (PERC) order that dismissed Washington Corrections Center for Women (Corrections Center) shop steward Cherry's unfair labor practice complaint. The Teamsters argue that (1) PERC erred in interpreting chapter 41.80 RCW's protections, (2) PERC erred in concluding that Cherry's e-mail activities were not statutorily protected, and (3) evidence adequately supports the hearing examiner's vacated conclusions and rebuts PERC's conclusions. Analyzing the merits of the issues properly before us on appeal, we hold that the Teamsters do not demonstrate that state law protects "concerted activities," which they contend includes the two e-mails Cherry sent to Corrections Center custody staff; nor do the Teamsters demonstrate that PERC erred in interpreting Washington's public employee rights law. Further holding that sufficient evidence supports PERC's findings that Cherry's actions were not protected by chapter 41.80 RCW, we affirm PERC.

## FACTS

Cherry is a Department of Corrections (DOC) officer at the Corrections Center. She is also a shop steward for the Union, meaning that she acts as a contact, an information source, and an advocate for Corrections Center union employees.

---

[2] Cherry and the Union are both plaintiffs in this suit. Cherry filed the unfair labor practice complaint, and Cherry was the only party listed in PERC's order, though throughout the action the Union represented her. In superior court, however, the Union was listed as a party along with Cherry. Both appeal the superior court order. We refer to them collectively as "the Teamsters."

## I. "CONCERTED ACTIVITIES"

### A. August 2009, No Immediate Sanctions

In August 2009, Cherry logged into the DOC's intranet, "Inside DOC," and read an article about DOC hiring a former state senator to serve as a victim advocate for female inmates. "Inside DOC" linked to a news article that included this new inmate victim advocate's salary. After reading these articles, Cherry used her DOC computer to send an e-mail from her DOC e-mail address to all Corrections Center custody staff which read:

> For your information:
>
> [The Corrections Center] will be getting a new staff [member]. . .former state Senator to be the inmate advocate for victims of staff sexual misconduct. And of course, look at her salary to be an advocate for inmates.
>
> Phyllis Cherry

Clerk's Papers (CP) at 274. Cherry's e-mail linked to the news article that showed the victim advocate's salary.

Within a month of Cherry's e-mail, Corrections Center Superintendent Douglas Cole investigated allegations that Cherry had committed misconduct by sending "an unprofessional e[-]mail" to DOC staff. CP at 379. Correctional Captain Michael Green interviewed Cherry, who acknowledged, "This [e-mail] *wasn't union business*"; "I didn't mention anything about the union, nor the [T]eamsters, nor did I sign this as Shop Steward Phyllis Cherry, it is *not union related*." CP at 381 (emphasis added). Instead, Cherry stated that she had circulated the e-mail because she wanted to be informative and share public information with all Corrections Center custody staff. Following this investigation, DOC pursued nothing further against Cherry regarding this e-mail.

B.  October 2009 E-mail and Reprimand

Then in October 2009, Cherry learned about a Corrections Center program, the "IF Project."[3] CP at 637.  Cherry e-mailed all Corrections Center custody staff, again from her DOC computer:

> Check this out!!!
>
> Now tell me why we are being sensitive when they have projects like this going on.  Inmates telling their stories as to how they made bad choices and ways to change their lives.  Inmates are trying to help others by telling that if they had whatever. . . .things could've been different.
>
> However, we are to be sensitive to their needs. . .with that sensitivity class!!!!!
>
> This was filmed inside [the Corrections Center] with several of the current inmates. . .even a person sentenced to life!!!!!
>
> Phyllis Cherry
>
> http://theifproject.com/

CP at 352.  Cherry's e-mail referenced a "[s]ensitivity" training class that the Corrections Center required all personnel to take as a result of misconduct between officers and female inmates.

In response to this e-mail, Superintendent Cole ordered an investigation about Cherry's "unprofessional e[-]mail" regarding the "IF Project."  CP at 417.  During the investigation, Cherry explained that she believed the "IF Project" was a great program and thought staff should know about it; she intended "to give information out and notify staff that this is a really good project."  CP at 419.  She asserted that she had sent the e-mail, not as a shop steward, but as

---

[3] The "IF Project" asked inmates, *"If there was something someone could have said or done that would have changed the path that lead you here, what would it have been?"* CP at 350.

"Correctional Officer Phyllis Cherry." CP at 424. She also added that "the e-mails [were] not related to union business." CP at 678. During this second investigation of Cherry's DOC e-mail use, Superintendent Cole authorized suspending Cherry's DOC e-mail and intranet account. On December 2, Superintendent Cole issued a letter of reprimand for Cole's personnel file, stemming from her "unprofessional e[-]mail to all custody staff on two occasions." CP at 160.

## II. UNFAIR LABOR PRACTICE COMPLAINT

Cherry, represented by the Union, filed an unfair labor practice complaint with PERC, alleging that the DOC interfered with employee rights and discriminated against Cherry in suspending her DOC online account, violating Washington law. In April 2010, a PERC hearing examiner heard testimony at an administrative hearing regarding Cherry's unfair labor practice complaint. The hearing examiner ruled in favor of Cherry and the Union.

PERC reversed the hearing examiner's decision, reinstated the reprimand letter in Cherry's personnel file, vacated the hearing examiner's findings and conclusions, and issued its own findings and conclusions. It found, among other things, that Cherry had sent the Correction Center staff two e-mails—one advising them of the Correction Center's new inmate victim advocate and her salary and the other informing them of the "IF Project." PERC concluded that neither e-mail fell under the public employees' collective bargaining protection of chapter 41.80 RCW.[4] Accordingly, PERC concluded that the DOC did not discriminate against Cherry or violate state law; and it dismissed her unfair labor practice complaint.

---

[4] Specifically, PERC concluded, "Cherry's actions [in sending the two e-mails at issue] were not actions protected by [c]hapter 41.80 RCW." CP at 580. PERC determined that the e-mails did not involve the type of actions that the statute protected, such as self-organization, forming, joining, assisting organizations, and collective bargaining negotiations. In this appeal, DOC

Cherry and the Union appealed PERC's order to Pierce County Superior Court, which affirmed the PERC's decision and also dismissed the complaint. Cherry appeals the superior court's order.

## ANALYSIS

### I. DOES WASHINGTON LAW PROTECT "CONCERTED ACTIVITIES"?

The Teamsters first argue[5] that PERC erred in concluding that employees' "concerted activities" are not protected unless there is a nexus to union negotiating or administration.[6] We decline the Teamsters' invitation to legislate judicially by expanding Washington's statutory law outlining protected activities for public employees to mirror the federal NLRA. We defer to PERC and affirm its interpretation of Washington law because the plain meaning of the statute's language as drafted by our legislature clearly does not protect public employees' "concerted activities" from employer interference, restraint, or coercion.

---

argues that no evidence shows (1) Cherry's e-mails related to matters that the union had discussed with the employer or anticipated discussing with the employer, (2) the e-mails concerned the administration of a collective bargaining agreement, or (3) the e-mails involved union-employer negotiations.

[5] The Teamsters also argue that the superior court erred in concluding that the union's right to self organize, under chapter 41.80 RCW, ended with the union's PERC certification. Because we do not review superior court appellate decisions in administrative appeals, and instead review only the administrative record, *see Postema v. Pollution Control Hearings Bd.*, 142 Wn.2d 68, 77, 11 P.3d 726 (2000), the Teamsters' claim of superior court error is not properly before us.

[6] In the private sector statutorily protected "concerted activities" also include collective employee activities for "other mutual aid or protections" regarding injunctions in labor disputes. *Briggs v. Nova Servs.*, 135 Wn. App. 955, 964, 147 P.3d 616 (2006), *aff'd*, 166 Wn.2d 794, 213 P.3d 910 (2009). But our state legislature has not expressly extended protections for such "concerted activities" to *public* employees.

A. Standard of Review and Rules of Law

We review a PERC decision in an unfair labor practice case according to Administrative Procedures Act (APA)[7] standards. *Pasco Police Officers' Ass'n v. City of Pasco*, 132 Wn.2d 450, 458, 938 P.2d 827 (1997). As we conduct our review, we sit in the same position as the superior court, applying the RCW 34.05.570 standard directly to the agency record. *Postema v. Pollution Control Hearings Bd.*, 142 Wn.2d 68, 77, 11 P.3d 726 (2000). An appellant is entitled to relief if, among other reasons, (1) the agency has erroneously interpreted or applied the law, or (2) the agency order is arbitrary and capricious. RCW 34.05.570(3)(d), (i).

Where a statute is clear on its face, we derive its plain meaning from the statute's language alone. *Ford Motor Co. v. City of Seattle, Exec. Servs. Dep't*, 160 Wn.2d 32, 41, 156 P.3d 185 (2007), *cert. denied*, 552 U.S. 1180 (2008). We accord substantial deference to an agency's interpretation of law in matters involving the agency's special knowledge and expertise. *Overlake Hosp. Ass'n v. Dep't of Health*, 170 Wn.2d 43, 50, 239 P.3d 1095 (2010).

Washington's legislature enacted RCW 41.80.050 to protect public employee rights to unionize and to bargain collectively. It provides that public union employees

> have the right to self-organization, to form, join, or assist employee organizations, and to bargain collectively through representatives of their own choosing for the purpose of collective bargaining free from interference, restraint, or coercion. Employees shall also have the right to refrain from any or all such activities.

RCW 41.80.050. Our legislature has also enacted state law prohibiting public employers from interfering with public employees' exercise of their right to organize and designate representatives for the purpose of collective bargaining. RCW 41.56.040. Our legislature has

---

[7] Ch. 34.05 RCW.

not, however, afforded Washington's public employees as extensive protections as it has given private sector employees.

## B. Analysis

The Teamsters argue that PERC erroneously interpreted RCW 41.80.050 and too narrowly construed what constitutes protected union activity when it ruled that this statute does not protect public employees' concerted activities unless it relates to union activity.[8] We reject the Teamsters' claims and affirm PERC on this issue.

The Teamsters claim that PERC erred in determining that state law does not protect "concerted activities." The plain language of Washington's public employee rights statute expressly grants employees the right to organize, form, join, assist in the formation of employee organizations, and collectively bargain. *See* RCW 41.80.050. Another statute prohibits public employer interference with public employees' organizing and collective bargaining. *See* RCW 41.56.040. Neither of these statutes mentions "concerted activities."

The federal NLRA, in contrast, expressly protects *private sector employees'* "concerted activities" and their right to "engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." 29 U.S.C. § 157. Congress passed the NLRA in 1935, decades before our legislature enacted Washington's *public employee* collective bargaining and protection statutes. Although Washington's legislature borrowed much of the NLRA language, it did not choose to incorporate the NLRA language specifically protecting

---

[8] The Teamsters assert that the *superior court* erred in failing to protect Cherry's union activity; but we do not consider the superior court's appellate decisions when we review an agency action in the administrative appeal context. *See Postema*, 142 Wn.2d at 77. Thus, we instead focus on the Teamsters' related claim that PERC misinterpreted state law.

"concerted activities" of Washington's *public* employees.[9] On the contrary, the Washington legislature clearly opted not to protect public employees' analogous "concerted activities." And it is not for our court to read such legislatively rejected protections into RCW 41.80.050 simply because Congress included such protections in the NLRA, a federal law outlining protections for private-sector employees.

Extending deference to PERC, we hold that it did not "erroneously interpret[] or appl[y] the law" when it evaluated Cherry's conduct in light of RCW 41.80.050's express protections, and not under the federal NLRA, which protects private employees' "concerted activities." RCW 41.80.050 plainly does not protect "concerted activities." Because the Teamsters do not demonstrate that PERC erred, we affirm PERC's dismissal of Cherry's unfair labor practice complaint.

## II. E-MAILS WERE NOT PROTECTED UNION ACTIVITY

Alternatively, the Teamsters argue that PERC erred in concluding that her DOC e-mails were not statutorily protected because overwhelming evidence establishes that they were inextricably linked to her shop steward role and thus were protected union activity. PERC,

---

[9] The federal protection for "concerted activities" is noticeably absent from our state's version of the analogous statute. Compare:

> Employees shall have the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in *other concerted activities* for the purpose of collective bargaining.

29 U.S.C. § 157 (emphasis added), with:

> [E]mployees shall have the right to self-organization, to form, join, or assist employee organizations, and to bargain collectively through representatives of their own choosing for the purpose of collective bargaining.

RCW 41.80.050.

however, properly concluded that Cherry's e-mails were unprotected under the applicable statute because the Teamsters failed to establish that Cherry's e-mails constituted protected union activity. Thus, we affirm PERC's order dismissing Cherry's unfair labor practice complaint on this alternative ground as well.[10]

### A. Standard of Review and Rules of Law

State law prohibits employers from discriminating or retaliating against a public employee because of that employee's membership in an employee organization. *See* RCW 41.80.110(1)(c). To determine whether an employer unlawfully discriminated or retaliated against an employee, PERC first analyzes whether the complainant has outlined a prima facie case by presenting evidence showing that (1) the complainant exercised a statutorily protected right, or communicated to the employer an intent to do so; (2) the employer deprived the complainant of some ascertainable right, benefit, or status; and (3) the exercise of the legal right and the discriminatory action are causally connected. *Yakima Police Patrolmen's Ass'n v. City of Yakima*, 153 Wn. App. 541, 554, 222 P.3d 1217 (2009).

Because PERC is entitled to substitute its findings for those of the hearing examiner, it is PERC's findings that are relevant on appeal. *Yakima Police Patrolmen's Ass'n*, 153 Wn. App. at 552. We review challenges to PERC's factual findings for substantial evidence in light of the

---

[10] The Teamsters also contend that although federal law does not protect *unreasonable* "concerted activity," her DOC e-mails should have been protected as reasonable. But a reasonableness inquiry is relevant only for protected conduct. *See Vancouver Sch. Dist. No. 37 v. Serv. Emps. Int'l Union, Local 92*, 79 Wn. App. 905, 919-20, 906 P.2d 946 (1995), *review denied*, 129 Wn.2d 1019 (1996), *abrogated on other grounds by City of Federal Way v. Pub. Emp't Relations Comm'n*, 93 Wn. App. 509, 512-13, 970 P.2d 752 (1998). Because Cherry's e-mails were not within Washington's statutorily protected public employee activities, their reasonableness is inconsequential. Accordingly, this reasonableness argument lacks merit.

whole record, i.e., evidence sufficient to persuade a fair-minded person of their truth. *Yakima Police Patrolmen's Ass'n*, 153 Wn. App. at 552-53. We review PERC's conclusions of law de novo and may substitute our interpretation of the law for PERC's interpretation. *Pasco Police Officers' Ass'n*, 132 Wn.2d at 458. Again, we extend great deference to PERC's interpretation of the laws it administers. *Pub. Emp't Relations Comm'n v. City of Kennewick*, 99 Wn.2d 832, 841-42, 664 P.2d 1240 (1983).

### B. Analysis

The Teamsters contend that PERC should have found Cherry's e-mails were linked to her shop steward role and were part of her union efforts, thus legally protected from employer interference. But PERC concluded that chapter 41.80 RCW did not protect Cherry's two e-mails and that Cherry failed to establish a prima facie discrimination case under RCW 41.80.110; therefore, PERC dismissed her unfair labor practice complaint.[11]

In order to determine whether state law protected Cherry's e-mails, we must first evaluate what actions fall within the class of actions statutorily protected by chapters 41.80 and 41.56 RCW. PERC has concluded that various activities constitute a public employee's "protected activities." For example, "an employee who asserts, or indicates an intent to assert, a violation of the collective bargaining agreement, is exercising a protected union activity." *Cmty. Coll. Dist. 5*, Decision 8850-A (PSRA, 2006). Additionally, an employee's filing of a grievance or unfair

---

[11] The Teamsters apply an "overwhelming evidence" test in contending that the record supports a conclusion that state law protected her e-mails. Br. of Appellant at 31 (capitalization omitted). They do not appear, however, to contest the validity of PERC's findings, but rather its legal *conclusions* that Cherry's e-mails were not protected. As we note above, we review PERC's legal conclusions de novo. *Pasco Police Officers' Ass'n*, 132 Wn.2d at 458. Thus, the Teamsters' "overwhelming evidence" standard does not apply.

labor practice complaint may constitute a protected activity. *Mukilteo Sch. Dist.*, Decision 5899-A (PECB, 1997). Union organizing activities are also protected. *Asotin County Hous. Auth.*, Decision 2471-A (PECB, 1987). And state law protects employees acting as union presidents and participating in collective bargaining negotiations. *Oroville Sch. Dist.*, Decision 6209-A (PECB, 1998). In each of these examples, the plaintiff-employee clearly demonstrated having been engaged in statutorily protected union activities related to organizing, filing grievances, or collective bargaining negotiations when the employer interfered.

Here, in contrast, Cherry's two DOC e-mails did not involve organizing, filing grievances, or engaging in collective bargaining. Cherry's e-mails never mentioned a union connection, union activity, or Cherry's shop steward position. To the contrary, Cherry acknowledged to the DOC that her first e-mail "wasn't union business," "didn't mention anything about the union," and was not "union related." CP at 387. Because Cherry's first e-mail, regarding the hiring of an inmate victim advocate, by her own admission, lacked any indicia tying it to union business or Cherry's role as shop steward, that e-mail was clearly not protected union activity under state law.

Similarly, Cherry sent the second DOC e-mail, regarding the "IF Project," not as a shop steward, but as "Correctional Officer Phyllis Cherry." CP at 424. Again, she stated that she did not send this e-mail for union business purposes, but simply to inform the staff. She even reiterated at her deposition that she had told the DOC that "the e-mails [were] not related to union business." CP at 678. Thus, this second e-mail, like the first, again by Cherry's own admission, had no direct ties to union activity or business. Therefore, the second e-mail, like the first, was not statutorily protected conduct.

In other contexts, PERC has concluded that evidence that is too generalized and unspecific does not rise to the level of protected union activity. *See Dieringer Sch. Dist.,* Decision 8956-A (PECB, 2007). To tie Cherry's e-mails to union business would require us to generalize and connect nonexistent dots.[12] No evidence supports an inference that Cherry's e-mails were intended to further union business, especially against the backdrop of her admission that these emails were unrelated to union business.[13]

Furthermore, we note that not all communications between a shop steward and fellow represented employees, regarding their employer, are automatically protected under Washington's applicable statutes. "Being a shop steward or union official does not give

---

[12] The Teamsters reference generalized conclusions, which they contend their overwhelming evidence supports. They note that Cherry served as "an effective advocate for employee interests, engaging in protected, concerted activity." Br. of Appellant at 35. As noted, Washington law does not protect public employees' "concerted activity." The Teamsters also state that employees and management perceived Cherry as "the Union's lynchpin in terms of the communication and distribution of information." Br. of Appellant at 35. Again, the Teamsters do not tie Cherry's role as a union leader to these e-mails. Finally, the Teamsters assert that the DOC's conduct temporarily suspending Cherry's DOC online access and issuing a letter of reprimand "had a chilling effect on her and other members of the bargaining unit." Br. of Appellant at 35. Even if true, the Teamsters do not demonstrate how this conclusion is of consequence here.

[13] The Teamsters cite the hearing examiner's findings of fact. Again, we do not review the hearing examiner's findings. *See Yakima Police Patrolmen's Ass'n,* 153 Wn. App. at 552. Instead, we review PERC's decisions, including its findings of fact.
 The Teamsters state, "[I]n issuing the letter of reprimand, the Employer expressly viewed Cherry's emails as actions taken in her role 'as a shop steward.'" Br. of Appellant at 36. The Teamsters, however, mischaracterize the record. In the letter of reprimand, Superintendent Cole said, "As a Shop Steward and your position and role as a correctional professional, your conduct reflected negatively on you." CP at 378. Superintendent Cole simply stated that Cherry's conduct reflected poorly on her as a leader, a shop steward and correctional officer.

employees *carte blanche* to engage in behavior that would ordinarily lead to discipline."[14] *Univ. of Wash.*, Decision 11199 (PSRA, 2011) (ruling that employer did not interfere with employee's protected rights when a shop steward was disciplined for sending an "insubordinate and disrespectful" e-mail). Ultimately, absent any connection between Cherry's DOC e-mail communications and union business, we cannot conclude that these e-mails were statutorily protected activities. Therefore, we affirm PERC's conclusion that Cherry's e-mails did not constitute protected activity under state law.[15]

---

[14] The Teamsters contend that PERC has historically protected public employee conduct when there is "a slight connection to union activity." Br. of Appellant at 31. They cite *Renton Technical Coll.*, Decision 7441-A (CCOL, 2002), and *Clallam County*, Decision 4011 (PECB, 1992). But *Renton Technical Coll.* involved a public employer's adverse actions against a union employee after the public employee contacted a legislator seeking information to assist the union in its negotiations and after he filed grievances against his employer. In *Clallam County*, an employer disciplined a public employee after the employee made derogatory remarks about the employer's recent management decisions that were contrary to the union's stance on that issue. There, PERC concluded that the public employee's comments were protected because they were made in the midst of contract negotiations and responded to a county resolution that the union had publicly opposed. Unlike *Renton Technical Coll.* and *Clallam County*, here, Cherry's DOC-originated e-mails had no direct connection with union activity.

[15] The Teamsters also argue that substantial evidence supports the hearing examiner's conclusion that the DOC improperly interfered with protected union activity. Because we do not review the hearing examiner's conclusions, *see Yakima Police Patrolmen's Ass'n*, 153 Wn. App. at 552, this claim is not properly before us.

We affirm PERC's dismissal of Cherry's unfair labor practice complaint.

_Johanson, J._

We concur:

_Hunt, J._

_Worswick, C.J._