[No. 64396-7-I.   Division One.   March 7, 2011.]

THE CITY OF SEATTLE ET AL., *Respondents*, v. THE PUBLIC EMPLOYMENT RELATIONS COMMISSION, *Defendant*, INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS, LOCAL 2898, *Appellant*.

---

*James H. Webster* and *Lynn D. Weir* (of *Webster Mrak & Blumberg*) and *Kathleen P. Barnard* (of *Schwerin Campbell Barnard Iglitzin & Lavitt LLP*), for appellant.

*Peter S. Holmes, City Attorney,* and *Frederick E. Wollett, Assistant,* for respondents.

¶1 LEACH, A.C.J. — *Johnnie's Poultry Co.*[1] prohibits an employer subject to federal labor laws from interviewing a bargaining unit member employee in preparation for an unfair labor practices proceeding without telling the employee the nature of the questioning and informing the employee that participation is voluntary and will not result in any reprisal. We must decide whether the Washington State Public Employment Relations Commission (PERC) erred in holding that the city of Seattle (City) must comply with the requirements of *Johnnie's Poultry* when it interviews bargaining unit members in preparation for a disciplinary grievance arbitration. We hold that PERC erred in

---

[1] 146 N.L.R.B. 770, 775 (1964), *enforcement denied on other grounds*, 344 F.2d 617 (8th Cir. 1965).

applying *Johnnie's Poultry* to the employer interviews in this case and affirm the trial court as to this issue.

¶2 We must also decide whether RCW 41.56.140(4) required the City to disclose certain information about its interviews with bargaining unit members to the International Association of Fire Fighters, Local 2898 (Union) and whether the City provided a sufficient explanation for withholding the requested information. We hold the City was not required to divulge the information, but substantial evidence supports PERC's finding that the City's explanation was inadequate. As a result, we affirm the trial court's decision on this issue in part and reverse in part.

## BACKGROUND

¶3 The Union represents all supervisory personnel of the Seattle Fire Department holding the rank of battalion chief and deputy chief. In October 2004, the Union filed a grievance on behalf of Battalion Chief Molly Douce, disputing disciplinary action the City took against her. The Union and the City scheduled arbitration. In preparation for the arbitration hearing, the City's attorney interviewed three deputy chiefs about their knowledge of the facts leading to the dispute. Upon learning of the interviews, the Union sent an e-mail to the City's attorney, asserting that the City could not question members of its bargaining unit without arranging the interviews through the Union. The Union also asked the City for the identities of everyone already interviewed, the questions asked and information provided, and a copy of all notes and statements. The City refused to comply with this request.

¶4 The Union filed an unfair labor practices complaint with PERC, alleging employer interference with employee rights in violation of RCW 41.56.140(1) and refusal to bargain in violation of RCW 41.56.140(4). The hearing examiner dismissed the complaint, finding that the interviewed employees were not questioned about activity involving their statutory rights and therefore the City did not

interfere with those rights. The examiner found that the information sought by the Union was either protected by the work-product privilege or that it was easily obtainable by the Union through other means.

¶5 The Union appealed to PERC. PERC affirmed the hearing examiner's dismissal of the unfair labor practices complaint because the Union failed to show that the interviews were coercive. In so doing, however, PERC decided that the rights enunciated in *Johnnie's Poultry*, a 1964 decision of the National Labor Relations Board (NLRB), apply to employees covered by Washington State's collective bargaining laws. PERC also found that no privilege protected the names of the interviewees, copies of their statements, and redacted copies of the City attorney's notes and ordered the City to provide the Union with that information. Finally, PERC found the City's explanation for withholding the requested information untimely, as the City fully responded only after the Union filed its unfair labor practices complaint.

¶6 The City appealed PERC's decision to the superior court. The court reversed PERC's finding that the City violated the disclosure requirements of chapter 41.56 RCW, adopting the hearing examiner's rationale. Further, the court held that the City was not required to comply with *Johnnie's Poultry*, stating, "This court concludes the commission erred by adopting a per se application of *Johnnie's Poultry* (no evidence in this case of coercion) and further erred by applying it to interviewing witnesses in preparation of an arbitration."

¶7 The Union appeals.

## STANDARD OF REVIEW

¶8 We review PERC's decision under the standards set forth in chapter 34.05 RCW, the Washington Adminis-

trative Procedure Act.[2] RCW 34.05.570(3) requires reversal of an agency order when the decision is based on an error of law,[3] is not based on substantial evidence,[4] or is arbitrary or capricious.[5] In reviewing an agency's order, the appellate court sits in the same position as the superior court.[6] Review is therefore limited to the record of the administrative tribunal, not that of the trial court.[7]

¶9 A reviewing court must uphold an agency's determination of fact "unless the court's review of the entire record leaves it with the definite and firm conviction that a mistake has been made."[8] When reviewing questions of law, the court may substitute its determination for that of the agency.[9] But because PERC's members have considerable expertise in labor relations, the court gives substantial weight to PERC's interpretations of the collective bargaining statutes.[10] Where an administrative decision involves a mixed question of law and fact, "the court does not try the facts de novo but it determines the law independently of the agency's decision and applies it to facts as found by the agency."[11]

¶10 In addition to Washington law, this court looks to federal decisions construing the National Labor Relations

---

[2] *City of Pasco v. Pub. Emp't Relations Comm'n*, 119 Wn.2d 504, 506, 833 P.2d 381 (1992).

[3] RCW 34.05.570(3)(d).

[4] RCW 34.05.570(3)(e).

[5] RCW 34.05.570(3)(i).

[6] *D.W. Close Co. v. Dep't of Labor & Indus.*, 143 Wn. App. 118, 125-26, 177 P.3d 143 (2008).

[7] *Renton Educ. Ass'n v. Pub. Emp't Relations Comm'n*, 101 Wn.2d 435, 440, 680 P.2d 40 (1984).

[8] *Renton Educ. Ass'n*, 101 Wn.2d at 440.

[9] *Pasco Police Officers' Ass'n v. City of Pasco*, 132 Wn.2d 450, 458, 938 P.2d 827 (1997).

[10] *City of Bellevue v. Int'l Ass'n of Fire Fighters, Local 1604*, 119 Wn.2d 373, 381, 831 P.2d 738 (1992).

[11] *Renton Educ. Ass'n*, 101 Wn.2d at 441.

Act (NLRA),[12] which are persuasive when interpreting similar provisions in the Washington statutes.[13]

## ANALYSIS

¶11 The Union first argues that the City should be required to comply with *Johnnie's Poultry* when interviewing bargaining unit member employees in preparation for a pending grievance arbitration. We disagree.

¶12 Public employees in Washington State have a "right to organize and designate representatives of their own choosing for the purpose of collective bargaining."[14] A public employer commits an unfair labor practice when it interferes with, restrains, or coerces public employees in the exercise of their rights or refuses to engage in collective bargaining.[15] RCW 41.56.030(4) defines "collective bargaining" as "the performance of the mutual obligations of the public employer and the exclusive bargaining representative to meet at reasonable times, to confer and negotiate in good faith, and to execute a written agreement with respect to grievance procedures and collective negotiations on personnel matters."

¶13 The NLRA contains similar provisions. Section 7 guarantees employees "the right to self-organization, to form, join, or assist labor organizations, to bargain collectively through representatives of their own choosing, and to engage in other concerted activities for the purpose of collective bargaining or other mutual aid or protection."[16] And section 8 outlines what constitutes an unfair labor

---

[12] 29 U.S.C. §§ 151-169.

[13] *Pasco Police Officers' Ass'n*, 132 Wn.2d at 458-59.

[14] RCW 41.56.040.

[15] RCW 41.56.140(1), (4).

[16] 29 U.S.C. § 157.

practice in language almost identical to our statute.[17] Because of this similarity, federal decisions will help to inform our analysis here.

¶14 *Johnnie's Poultry* involved a section 8 unfair labor practices complaint, alleging that the employer interrogated, threatened, and coerced its employees and refused to bargain collectively with the employees' union.[18] The facts are instructive. In the fall of 1962, several Johnnie's Poultry employees attempted to organize the plant by signing union authorization cards and holding meetings.[19] Having established a majority of employees in favor of unionizing, the union sent a letter to Johnnie's Poultry requesting recognition as the employees' bargaining representative.[20] The union enclosed with its letter copies of the signed cards.[21] When Johnnie's Poultry declined to recognize the union, it initiated an unfair labor practices proceeding.[22] To prepare for its defense, the company's attorneys interviewed each of the employees who signed an authorization card.[23] The attorneys asked the employees to identify their signatures on the cards and to describe the circumstances under which they signed the cards.[24] Some employees were asked whether they understood the meaning of the card.[25] The interviews also revealed that employees were harassed for wearing the union's button and, on one occasion, the com-

---

[17] The pertinent sections of the statute read,

It shall be an unfair labor practice for an employer—(1) to interfere with, restrain, or coerce employees in the exercise of the rights guaranteed in section 157 of this title; ... (5) to refuse to bargain collectively with the representatives of his employees, subject to the provisions of section 159(a) of this title.

29 U.S.C. § 158.

[18] *Johnnie's Poultry*, 146 N.L.R.B. at 781.

[19] *Johnnie's Poultry*, 146 N.L.R.B. at 782.

[20] *Johnnie's Poultry*, 146 N.L.R.B. at 782.

[21] *Johnnie's Poultry*, 146 N.L.R.B. at 782.

[22] *Johnnie's Poultry*, 146 N.L.R.B. at 772.

[23] *Johnnie's Poultry*, 146 N.L.R.B. at 772.

[24] *Johnnie's Poultry*, 146 N.L.R.B. at 772.

[25] *Johnnie's Poultry*, 146 N.L.R.B. at 772.

pany's owner told an employee that if the union tried to organize the plant, " '[Y]ou know how to vote.' "[26]

¶15 The NLRB found that "by interrogating employees concerning their union adherence and activities Respondent engaged in interference, restraint, and coercion in violation of Section 8(a)(1) of the [NLRA]."[27] The board recognized, however, that a limited privilege exists to allow employers to question employees on matters involving their section 7 rights without incurring liability.[28] This privilege applies when the interrogation is necessary to prepare the employer's defense in an unfair labor practices proceeding.[29] But, in allowing the privilege, the board emphasized that certain safeguards must be followed to minimize the coercive nature of the interrogation.[30] Specifically, before an interview, an employer must (1) inform the employee of the purpose of the questioning, (2) assure the employee that no reprisal will take place regardless of whether or not they participate in the questioning, and (3) inform the employee that participation in questioning is voluntary.[31]

¶16 The NLRB continues to require employers to provide *Johnnie's Poultry* warnings to each employee it interviews in preparation for defending an unfair labor practices complaint.[32] The inquiry changes, however, when the questioning occurs outside of the unfair labor practices context. In situations where an unfair labor practices complaint has not been filed and an employer questions an employee concerning his section 7 rights, the question is whether,

---

[26] *Johnnie's Poultry*, 146 N.L.R.B. at 771, 774.

[27] *Johnnie's Poultry*, 146 N.L.R.B. at 776.

[28] *Johnnie's Poultry*, 146 N.L.R.B. at 774-75.

[29] *Johnnie's Poultry*, 146 N.L.R.B. at 775.

[30] *Johnnie's Poultry*, 146 N.L.R.B. at 775.

[31] *Johnnie's Poultry*, 146 N.L.R.B. at 775.

[32] *See, e.g., L&L Wine & Liquor Corp.*, 323 N.L.R.B. 848, 853 (1997); *Beverly Health & Rehab. Servs., Inc.*, 332 N.L.R.B. 347, 349 (2000); *Dayton Typographic Serv., Inc. v. Nat'l Labor Relations Bd.*, 778 F.2d 1188, 1195 (6th Cir. 1985); *ITT Auto. v. Nat'l Labor Relations Bd.*, 188 F.3d 375, 389 (6th Cir. 1999).

under all the circumstances, the interrogation reasonably tended to restrain, coerce, or interfere with those rights.[33] A number of federal circuits and Division Two of this court have used the *"Bourne* factors"[34] to evaluate the questioning's coercive effect.[35]

¶17 Two conditions must therefore be met before a court will require an employer to administer *Johnnie's Poultry* warnings. First, the questioning must concern a protected, union-related activity. The Union argues that the questioning here meets this condition because "PERC and Washington courts have consistently held that filing and processing grievances are activities protected by Chapter 41.56 RCW from employer interference." The protected right, however, is the right to pursue a grievance.[36] The deputy chiefs were not themselves pursuing a grievance, and thus were not exercising a protected right, when they answered the City's questions pertaining to another employee's grievance.

¶18 The Union further argues that "[e]mployees are protected when they associate with or support a grievant in the grievance procedure." The lone case the Union cites in

---

[33] *See, e.g., Rossmore House*, 269 N.L.R.B. 1176, 1177 (1984); *Sunnyvale Med. Clinic, Inc.*, 277 N.L.R.B. 1217, 1217 (1985); *see also V&S ProGalv, Inc. v. Nat'l Labor Relations Bd.*, 168 F.3d 270, 280 (6th Cir. 1999); *Nat'l Labor Relations Bd. v. McCullough Envtl. Servs., Inc.*, 5 F.3d 923, 928 (5th Cir. 1993); *Hotel Emps. & Rest. Emp. Union, Local 11 v. Nat'l Labor Relations Bd.*, 760 F.2d 1006, 1009 (9th Cir. 1985).

[34] *Bourne v. Nat'l Labor Relations Bd.*, 332 F.2d 47, 48 (2d Cir. 1964).

[35] *See City of Vancouver v. Pub. Emp't Relations Comm'n*, 107 Wn. App. 694, 706, 33 P.3d 74 (2001). These factors are

> (1) the history of the employer's attitude towards its employees; (2) the type of information sought; (3) the company rank of the questioner; (4) the place and manner of the conversation; (5) the truthfulness of the employee's responses; (6) whether the employer had a valid purpose for obtaining the information; (7) if so, whether the employer communicated it to the employee; and (8) whether the employer assured the employee that no reprisals would be forthcoming should he or she support the union.

[36] *See Clallam County v. Pub. Emp't Relations Comm'n*, 43 Wn. App. 589, 599, 719 P.2d 140 (1986) (holding that to pursue a grievance is a right protected under chapter 41.56 RCW).

support of that proposition, *Isaac v. City of Omak*,[37] is distinguishable. *Isaac* did not involve employer interviews. And in *Isaac* the employer threatened its employees to prevent those employees from exercising their own grievance rights.[38] This case includes no element of any threat to union-related activity, making *Isaac* inapposite.

¶19 In addition, for *Johnnie's Poultry* to apply, the questioning must occur in preparation for an employer's defense against an unfair labor practices complaint. The Union fails to persuade us that we should extend the federal decisions noted above to hold that *Johnnie's Poultry* warnings must be given before interviewing employees to prepare for a disciplinary grievance arbitration.[39]

¶20 Because the questioning did not concern a protected activity and did not occur in preparation for the City's unfair labor practices defense, we affirm the trial court's decision as to this issue.

■ ¶21 Next, the Union argues that the City violated RCW 41.56.140(4) when it refused to provide the information the Union requested after the City's interviews, including the identities of the employees and copies of the employees' statements and attorney's notes. The City does not dispute that it had a duty to provide the Union with certain information relating to the grievance. Rather, the dispute concerns when and under what circumstances that duty is owed. The City claims that it fulfilled its duty when it supplied all relevant information to the Union before

---

[37] No. 5579-B, 1998 WL 812651 (Wash. Pub. Emp't Relations Comm'n 1998).

[38] There, a union steward filed a grievance against the Omak Police Department, protesting the suspension of a bargaining unit member. 1998 WL 812651, at *6. Other bargaining unit members supported the grievance. 1998 WL 812651, at *7. In retaliation, the employer sent members "ominous" e-mail messages with frequent references to discipline. 1998 WL 812651, at *13. PERC found that the City violated RCW 41.56.140(1) by "issuing e-mail messages designed to 'stomp on' bargaining unit employees after and in response to the exercise of grievance rights protected by Chapter 41.56 RCW." 1998 WL 812651, at *16.

[39] We do not address whether PERC may require an employer to comply with *Johnnie's Poultry* when questioning a bargaining unit member regarding activities protected under chapter 41.56 RCW in preparation for an unfair labor practices proceeding.

disciplining Douce, and any information obtained between discipline and arbitration was irrelevant and unnecessary. Because the Union failed to establish that the information was relevant, we affirm the trial court as to the City's duty to disclose.

¶22 Under RCW 41.56.140(4), "[i]t shall be an unfair labor practice for a public employer . . . to refuse to engage in collective bargaining." The duty to bargain includes providing relevant and necessary information needed by the union for the proper performance of its duties in the collective bargaining process[40] and extends to requests for information required for the processing of grievances.[41] "The duty of an employer to furnish information relevant to the processing of a grievance does not terminate when the grievance is taken to arbitration."[42] The requesting party, however, "must demonstrate more than an abstract, potential relevance of the requested information, and must show that the information is actually relevant."[43] While the duty turns on the facts of a particular case, a union's bare assertion that it needs the information "does not automatically oblige the employer to supply all the information."[44] But a party that receives a request for information must respond and must timely explain any objection to the request.[45]

¶23 Here, the Union provides no more than a bare assertion that the information it requested was relevant. The Union asserts that "[i]n this case there is no dispute about the relevance of the information the Union requested

[40] Int'l Ass'n of Fire Fighters, 119 Wn.2d at 383; Cook Paint & Varnish Co. v. Nat'l Labor Relations Bd., 208 U.S. App. D.C. 339, 648 F.2d 712, 716 (1981).

[41] Teamsters Union, Local 174 v. King County, No. 6772-A, 1999 WL 1338342, at *4 (Wash. Pub. Emp't Relations Comm'n Dec. 14, 1999); San Diego Newspaper Guild, Local 95 v. Nat'l Labor Relations Bd., 548 F.2d 863, 866-67 (9th Cir. 1977).

[42] Cook, 648 F.2d at 716.

[43] Local 174, 1999 WL 1338342, at *4.

[44] Local 174, 1999 WL 1338342, at *4.

[45] Int'l Longshore & Warehouse Union, Local 9 v. Port of Seattle, No. 7000-A, 2000 WL 1858211, at *5 (Wash. Pub. Emp't Relations Comm'n Nov. 14, 2000).

concerning interviews by the City's attorney." This argument would be insufficient to establish relevance even if it were not directly contradicted by the City's contention that the information is irrelevant. The Union further claims that "[i]nformation pertaining to employees in the bargaining unit is presumptively relevant." While information such as wages, hours, and terms and conditions of employment is presumptively relevant,[46] that is not the type of information the Union requested here. The Union fails to meet its burden to show that the information it sought was relevant.

¶24 Finally, the Union contends that the City violated its duty to explain why it denied the Union's request for information. Neither party disputes the duty, but the City contends that it fulfilled its obligation with two letters to the Union, one dated May 17, 2005, and another sent two days after the Union filed its unfair labor practices complaint. PERC found these letters insufficient. Substantial evidence supports this finding.

¶25 First, the City's May 17 letter simply stated that it "will not disclose to you or your client any of the information gathered." And while a copy of a 2004 letter enclosed with the May 17 letter responded to the *Johnnie's Poultry* issue, it did not provide a reason for refusing to turn over the requested information. Second, the letter sent by the City after the Union filed its unfair labor practices proceeding came too late to fulfill its obligation. The purpose of the duty is to avoid unnecessary litigation. Quoting its decision in *International Longshore & Warehouse Union, Local 9 v. Port of Seattle*,[47] PERC explained,

> "The Commission expects that parties will negotiate solutions to any difficulties they encounter in connection with information requests. This is consistent with viewing the duty to provide information as part of an ongoing and continuous

---

[46] *Bremerton Patrolmen's Ass'n v. City of Bremerton*, No. 6006-A, 1998 WL 86012, at *4 (Wash. Pub. Emp't Relations Comm'n Jan. 1998); *Nw. Publ'ns, Inc.*, 211 N.L.R.B. 464, 465 (1974).

[47] No. 7000-A, 2000 WL 1858211, at *5 (Wash. Pub. Emp't Relations Comm'n Nov. 14, 2000).

396

obligation to bargain. Although an employer may initially reply to an information request by claiming that compliance is difficult or not warranted, it must also explain its concerns to the union and make a good faith effort to reach a resolution that will satisfy its concerns and yet provide maximum information to the union."

Here, PERC further elaborated, "[T]he employer's refusal coupled with its lack of explanation for its denial left the union with few options aside from filing a complaint."

## CONCLUSION

¶26 Affirmed in part and reversed in part.

APPELWICK and SPEARMAN, JJ., concur.

Review denied at 172 Wn.2d 1005 (2011).