

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| UNIVERSITY OF WASHINGTON, | ) | No. 68376-4-I |
| Respondent, | ) | |
| | ) | DIVISION ONE |
| v. | ) | |
| WASHINGTON FEDERATION OF STATE EMPLOYEES, | ) | PUBLISHED OPINION |
| Appellant. | ) | FILED: June 24, 2013 |

BECKER, J. — Washington law guarantees state employees the right "to bargain collectively through representatives of their own choosing." RCW 41.80.050. A state employer may not, therefore, impose upon employees its own choice as to which labor union should represent them. Here, the University of Washington insisted on moving a group of hospital employees to a bargaining unit represented by a different union as a condition of reallocating them to a position with a higher pay grade. The Public Employment Relations Commission correctly decided that this was an unfair labor practice.

## FACTS

For many years, the Washington Federation of State Employees has been the labor representative for employees working for the University of Washington

at Harborview Medical Center. This appeal involves a group of about 35 Harborview employees who are classified as "specimen processing technicians." In 2003, it came to the University's attention that these employees were doing the same work as a group of employees at a different University facility who were on a higher pay scale. These other employees, classified as "clinical laboratory technicians," worked at the University of Washington Medical Center. The University decided that the Harborview employees needed to be "reallocated" as clinical laboratory technicians. Under state civil service rules, reallocation of a position means the "assignment of a position to a different class." WAC 357-01-270.

The University reallocated the Harborview employees and, at the same time, transferred their work out of the Federation's Harborview bargaining unit. Both of these actions were taken without notice to the Federation and without providing an opportunity for bargaining.

The Federation filed a complaint with the Public Employment Relations Commission. In 2006, the Commission found that the University had committed an unfair labor practice by unilaterally skimming bargaining unit work out of the Federation's bargaining unit without satisfying its bargaining obligations.[1] The Commission ordered the University to return the employees to their previous job

---

[1] Wash. Fed'n of State Emps. v. Univ. of Wash., No. 17946-U-04-4627, 2005 WL 636216 (Wash. Pub. Emp't Relations Comm'n March 2, 2005), affirmed, Wash. Fed'n of State Emps. v. Univ. of Wash., No. 17946-U-03-4627, 2006 WL 4595093 (Wash. Pub. Emp't Relations Comm'n Sept. 5, 2006).

classification as specimen processing technicians and to return their work to the Federation's Harborview bargaining unit. The University complied.

The problem then became how to maintain the employees at the higher rate of pay. The Federation proposed that the University create a new job classification of clinical laboratory technicians just for Harborview. By this means, the employees could get paid at the higher rate while remaining in the Federation's Harborview bargaining unit. The University did not accept the Federation's proposal but did agree to freeze the employees at the higher level of wages they had been receiving.

The wage freeze arrangement was not entirely satisfactory because it did not achieve complete parity for the specimen processing technicians at Harborview. Unlike their counterparts, they were not entitled to state-mandated pay raises. The University once again decided it would be best to reallocate them as clinical laboratory technicians and to move their work out of the Federation bargaining unit. The University's approach now meant that the employees would be transferred into a bargaining unit of the Service Employees International Union (SEIU) 925. In 2003, when the University first decided to reallocate the Harborview technicians, the job class of clinical laboratory technicians was unrepresented, but the Commission had recently certified SEIU to represent a group of employees at the University Medical Center that included the job class of clinical laboratory technicians.

The University contacted the Federation to discuss its plan for resolving the status of the employees. The Federation again responded by proposing that

3

the employees be given their own job code as clinical laboratory technicians at Harborview. That way, they would be on the same pay scale as their counterparts at the University Medical Center, while their work would remain in the bargaining unit represented by the Federation. The University expressed the belief that it would be more efficient if all the clinical laboratory technicians were in the SEIU bargaining unit. The Federation argued that it had a fundamental right to retain these employees within the Harborview bargaining unit that historically had represented them. The employees complained to both sides that they were being "held hostage" by the dispute.

In April 2008, the Federation filed with the Commission the complaint that gave rise to this appeal, alleging among other things that the University was refusing to bargain in good faith about the status of the employees, as evidenced by a pattern of insisting that they be transferred into SEIU. A three-day hearing was held. In September 2010, a hearing examiner dismissed the complaint.[2] As the examiner perceived the dispute, the only issue involved was reallocation. He found that the parties had engaged in "hard" bargaining on that issue by sticking to their respective positions, but he concluded that there was no refusal by the University to bargain in good faith. The authority he relied on was RCW 41.80.005(2): "The obligation to bargain does not compel either party to agree to a proposal or to make a concession, except as otherwise provided in this chapter."

---

[2] Wash. Fed'n of State Emps. v. Univ. of Wash., No. 21681-U-08-5529, 2010 WL 3726542 (Wash. Pub. Emp't Relations Comm'n Sept. 17, 2010).

The Federation appealed to the Commission. In March 2011, the Commission reversed the examiner's decision.[3] The Commission left unaltered the examiner's finding that the University had bargained in good faith about the reallocation of the employees to a different job classification. The Commission concluded, however, that the real issue raised by the complaint was not a refusal to bargain about reallocation; it was the University's improper attempt to reconfigure the bargaining unit. According to the Commission's decision, the University's insistence on moving the employees into the SEIU unit amounted to a refusal to bargain and an interference with the employees' collective bargaining rights.

> Regardless of the job classification assigned to a particular employee, [the Federation] retains the right under Chapter 41.80 RCW to represent those employees that it was historically certified to represent and also retains the right to preserve the employees' historical work jurisdiction, including any newly assigned work. Therefore, even when an employer assigns new duties to a bargaining unit position and then reallocates that position to a new classification, the position still remains in the historical bargaining unit, and an employer may not unilaterally move employees to a different bargaining unit, nor may it move them after negotiating to impasse.[4]

The Commission found the University had committed an unfair labor practice and ordered the University to cease and desist from attempting to bargain the configuration of employee bargaining units.

The University sought judicial review in superior court. The Federation intervened to defend the Commission's ruling. The superior court reversed the

---

[3] Univ. of Wash. v. Wash. Fed'n of State Emps., No. 21681-U-08-5529, 2011 WL 772225 (Wash. Pub. Emp't Relations Comm'n March 1, 2011), hereafter "Decision."
[4] Decision at *5.

5

Commission and ordered that the Federation's complaint be dismissed. The Federation now appeals, seeking reinstatement of the Commission's decision.

In reviewing administrative action, this court sits in the same position as the trial court, applying the standards of the Washington Administrative Procedure Act, chapter 34.05 RCW, directly to the record before the agency. Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402, 858 P.2d 494 (1993). Reviewing courts may grant relief only if the party challenging the agency order shows that the order is invalid for one of the reasons set forth in the act at RCW 34.05.570(3). Yakima Police Patrolmen's Ass'n v. City of Yakima, 153 Wn. App. 541, 553, 222 P.3d 1217 (2009). In its petition for judicial review, the University relied on those sections of the Administrative Procedure Act that permit a court to grant relief from an agency order where:

> (b) The order is outside the statutory authority or jurisdiction of the agency conferred by any provision of law;
>  . . .
> (d) The agency has erroneously interpreted or applied the law;
> (e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter;
>  . . . .
> (h) The order is inconsistent with a rule of the agency unless the agency explains the inconsistency by stating facts and reasons to demonstrate a rational basis for inconsistency; or
> (i) The order is arbitrary or capricious.

RCW 34.05.570(3).

Because the Commission is entitled to substitute its findings for those of the hearing examiner, it is the Commission's findings that are relevant on appeal. Yakima Police, 153 Wn. App. at 552. The Commission's findings of fact are

6

reviewed for substantial evidence; conclusions of law are reviewed de novo. Yakima Police, 153 Wn. App. at 552. The Commission's interpretation of the collective bargaining statutes "is entitled to substantial weight and great deference" in view of its expertise in the area of collective bargaining. City of Bellevue v. Int'l Ass'n of Fire Fighters, Local 1604, 119 Wn.2d 373, 382, 831 P.2d 738 (1992).

**Issue 1:** Was the University attempting to bargain the configuration of bargaining units? **Answer:** Yes.

The Commission adopted the examiner's findings of fact and conclusions of law but added one more finding and one more conclusion that the University challenged in its petition for review by the superior court. The Commission's finding of fact 12 states that during the course of negotiations with the Federation, the University "proposed and insisted" that once the employees were reallocated to the new job classification, they would have to be transferred to a bargaining unit of SEIU. The Commission's conclusion of law 6 states that the University's firm position was an attempt "to bargain the configuration of the bargaining units" represented by the two unions.

The University contends it did not propose, insist on, or attempt to bargain the reconfiguration of the bargaining units. According to the University, its discussions with the Federation about the status of the employees were based on a good faith understanding that transferring them to the SEIU bargaining unit was unavoidable, given the fact that SEIU had been certified as the representative of a bargaining unit at the University Medical Center that included the job class of clinical laboratory technicians.

7

The University does not contend that reconfiguration actually was unavoidable. Nor could it so contend in the face of evidence presented by the Federation that there are already numerous situations where University employees in the same job classification are represented by different unions. And even if the record established beyond doubt that the University had a good faith understanding that transfer of the employees to SEIU was unavoidable, the University's "understanding" was not relevant to making a finding about what the University actually did.

Substantial evidence supports the finding that the University "proposed and insisted" on moving the employees to SEIU. The University notified the Federation on October 4, 2007, "of the contemplated reclassification" of the specimen processing technicians to SEIU. The University adhered firmly to this position over the following year, as reflected in communications in November 2007, April 2008, and June 2008. In July 2008, the University maintained its position that the employees' work should be "reallocated" to SEIU and therefore the University was unwilling to accept the Federation's offer.

From this record, it is logical to draw the conclusion that the University was attempting to bargain a reconfiguration of the bargaining units. The foreseeable effect of the proposal the University was insisting on would be to remove work from the Federation's Harborview bargaining unit and add it to the SEIU bargaining unit. We find no reason to overturn finding of fact 12 or conclusion of law 6.

8

**_Issue 2:_** Was it an unfair labor practice for the University to insist that employees be transferred out of their existing union? **_Answer: Yes._**

State employees in Washington enjoy the right "to bargain collectively through representatives of their own choosing for the purpose of collective bargaining free from interference, restraint, or coercion." RCW 41.80.050. Accordingly, it is an unfair labor practice for an employer to "interfere with, restrain, or coerce employees in the exercise of" their collective bargaining rights. RCW 41.80.110(1)(a). It is also an unfair labor practice for an employer to "refuse to bargain collectively with the representatives of its employees." RCW 41.80.110(1)(e). The Commission concluded that subsections (a) and (e) were both violated by the University's attempt to bargain with the Federation about which union should represent the employees. The University asks this court to hold that its conduct did not amount to an unfair labor practice.

The University had no legal right to insist, in bargaining, that the Federation agree to let the employees be moved to another union. The configuration of collective bargaining units is a function delegated by the legislature to the Commission. The Commission has the authority to certify bargaining units, and this includes "determining the new units or modifications of existing units." RCW 41.80.070(1). In delineating between units, the Commission is required to consider the "duties, skills, and working conditions of the employees; the history of collective bargaining; the extent of organization among the employees; the desires of the employees; and the avoidance of excessive fragmentation." RCW 41.80.070(1).

9

Where some change calls into question the proper boundaries of a bargaining unit, the appropriate procedure is for the affected party or parties to file a timely unit clarification petition with the Commission. RCW 41.56.060; Int'l Ass'n of Fire Fighters, Local 1052 v. Pub. Emp't Relations Comm'n, 29 Wn. App. 599, 601-02, 630 P.2d 470, review denied, 96 Wn.2d 1004 (1981). An entire chapter of the Washington Administrative Code is devoted to the procedures for unit clarification petitions. See chapter 391-35 WAC. The Commission will consider a unit clarification petition only if it is based on a recent change of circumstances. WAC 391-35-020(4)(a).[5] The University did ask the Commission three times to assign all clinical laboratory technicians to the SEIU bargaining unit. But the University's first petition was not filed until 2008. The Commission dismissed each petition as untimely. The Commission's orders dismissing the University's unit clarification petitions as untimely have not been challenged on appeal.

In the decision at issue in this appeal, the Commission explains that filing a timely unit clarification petition would have been the appropriate method for the University to use to resolve this dispute. "Unit determination questions are within the authority of the Commission to decide, not matters for parties to agree on or determine among themselves, and the Commission need not give any weight or deference to agreements between parties."[6] Thus, if the University believed that reallocating the employees into a job classification that SEIU had been certified

_____

[5] Decision at *9 n.8.
[6] Decision at *5.

10

to represent would automatically result in transferring them into the SEIU bargaining unit, the University was mistaken. Their job classification "still remains in the historical bargaining unit, and an employer may not unilaterally move employees to a different bargaining unit, nor may it move them after negotiating to impasse."[7]

In support of the conclusion that it was an unfair labor practice for the University to attempt to bargain about the configuration of a bargaining unit, the Commission cited <u>Boise Cascade Corp. v. National Labor Relations Board</u>, 860 F.2d 471 (D.C. Cir. 1988). In <u>Boise Cascade</u>, after the employer and union arrived at a bargaining impasse, the employer unilaterally imposed a change in how the employees' bargaining units would be configured. The court held this action was a "fundamental" interference with the employees' bargaining rights:

> The reasons why the law does not sanction a unilateral change by the employer in the scope of the bargaining units are as simple as they are fundamental. . . .
> . . . [I]f an employer could vary unit descriptions at its discretion, it would have the power to sever the link between a recognizable group of employees and its union as the collective bargaining representative of these employees. This, in turn, would have the effect both of undermining a basic tenet of union recognition in the collective bargaining context and of greatly complicating coherence in the negotiation process. . . .
> . . . [N]either an employer nor a union has the unilateral power to modify the scope of the bargaining unit as determined by the [National Labor Relations] Board, whether following bargaining to impasse or otherwise.

---

[7] Decision at *5.

Boise Cascade, 860 F.2d at 475. The court explained further that "to allow a party to insist upon a change in the scope of a bargaining unit would subvert the authority of the [National Labor Relations] Board to make binding determinations regarding the appropriateness of bargaining units." Boise Cascade, 860 F.2d at 475.

The University acknowledges that federal decisions construing the National Labor Relations Act are persuasive in interpreting similar provisions of Washington labor statutes. See Nucleonics Alliance, Local Union No. 1-369 v. Wash. Pub. Power Supply Sys., 101 Wn.2d 24, 677 P.2d 108 (1984). The University argues, however, that the Commission misinterpreted and misapplied Boise Cascade. The distinction the University relies on is that in Boise Cascade, the employer unilaterally implemented the reconfiguration of the bargaining units, while here the University stopped short of implementing its proposal.

The distinction between an attempt and a fait accompli is not meaningful in these circumstances. The Commission did not say that the University committed an unfair labor practice merely by raising the possibility of a reconfiguration in its discussions with the Federation. What concerned the Commission was that the University was unyielding in its position that reallocation of the employees had to be accompanied by transferring their work to SEIU. The purpose of reallocating the positions was to increase the pay of the affected employees at Harborview. By joining reallocation to reconfiguration, the University effectively made reconfiguration of the bargaining unit a condition of higher pay. This conduct violated the fundamental principle embodied in Boise

12

Cascade: an employer may not force upon employees its own choice of who should be their collective bargaining representative.

For more than a year of discussion about what to do with the Harborview specimen processing technicians, the University steadfastly refused to consider any solution that did not include moving them to SEIU. The Commission correctly concluded that Boise Cascade supports the decision to find that the University committed an unfair labor practice.

The University further contends that the Commission acted arbitrarily by applying Boise Cascade in a manner that is irreconcilable with the Commission's own decisions. The Commission retained the examiner's finding that the University did not violate its obligation to bargain in good faith, and the University sees that finding as inconsistent with the Commission's ultimate conclusion that the University's conduct was a refusal to bargain. We disagree. The examiner's finding pertained to the topic of reallocation. The Commission's finding pertained to the topic of reconfiguring the bargaining units. The Commission could reasonably conclude that the University had a right to take an unyielding position on its proposal for reallocation and, at the same time, conclude that the University's conduct amounted to a refusal to bargain when its proposal for reallocation was conditioned upon reconfiguration.

The University also contends the Commission arbitrarily departed from its own reasoning in the first unfair labor practice decision in this matter in 2006. That decision was based on the Federation's complaint that the University had reallocated the employees and moved them out of the Federation's bargaining

unit without notifying the Federation. The Commission found in 2006 that it was an unfair labor practice for the University to reallocate without giving the Federation an opportunity to bargain about the effect the reallocation would have on the employees. But the decision did not characterize the transfer of the employees' work outside the Federation's bargaining unit as an effort to reconfigure the bargaining unit. Why, the University asks, should the Commission be allowed to raise the reconfiguration issue now when it was not discussed in the previous decision?

The Commission, like this court, undoubtedly tries to avoid deciding issues not presented. The University's failure to bargain before removing the work was the only conduct the Federation complained of in its first petition. In the present case, the University did bargain; but as the petition clearly alleged, the University persistently refused to consider any resolution of the employees' status that did not involve transferring them to SEIU. The University's unyielding demand that the Federation accede to the transfer of the employees to SEIU is the reason why the Commission found that the University was unlawfully attempting to bargain configuration:

> In this case, it is readily apparent from the record that the employer continually insisted during bargaining that, once the employees were reallocated into the [clinical laboratory technician] classification, they would be transferred to SEIU's bargaining unit. The employer made it perfectly clear . . . that the employer was unwilling to accept any alternative proposed by [the Federation].[8]

---

[8] Decision at *6.

The University's insistence, maintained over many months, provided a rational basis for the Commission to conclude that the issue presented in this case was different from the issue presented by the 2006 decision.

As explained by the Federation, the difference is between a "skimming" case and a "scope" case. The Commission has observed in an unrelated case that "Distinguishing between skimming and scope cases is not an easy task."[9] Nevertheless, the distinction is important because an attempt to bargain the scope of a bargaining unit is a direct assault upon the Commission's exclusive statutory authority to determine the configuration of bargaining units. Boise Cascade makes the same point where it explains that the "scope of the bargaining unit" is determinative of what employees the unit represents, and while the concept of scope can be difficult to define, "it is clear" that an employer may not alter the composition of the bargaining unit under the guise of the transfer of unit work. Boise Cascade, 860 F.2d at 474-75.

We conclude that the Commission acted in accordance with law, consistently with its own rules, and not arbitrarily, in its decision that the University committed an unfair labor practice by insisting that employees be transferred out of their existing union.

---

[9] Teamsters Local 763 v. Snohomish County, No. 19393-U-05-4924, 2007 WL 1959331, at *2 (Wash. Pub. Emp't Relations Comm'n June 14, 2007).

**Issue 3:** Did the Commission unfairly decide the case on the basis of an issue not specifically identified in the preliminary ruling? **Answer: No.**

Under the Commission's administrative scheme, a cause of action to be heard by the Commission is framed by a preliminary ruling issued by a hearing examiner. WAC 391-45-110. Here, the preliminary ruling identified two causes of action: an interference with the employees' collective bargaining rights and a refusal to bargain, "by failing or refusing to meet and negotiate with the exclusive bargaining representative of its employees concerning wages for specimen processing technicians." The preliminary ruling did not specifically mention that a persistent attempt to bargain a reconfiguration of bargaining units was a violation that would fit into these general categories. The University contends the Commission injected the reconfiguration issue into the case sua sponte, and as a result, the University was not prepared to confront the issue and did not have an ample opportunity to be heard.

The record does not compel us to conclude that the University was blindsided. A preliminary ruling is based on the filing of a detailed complaint. WAC 391-45-050. The Federation's lengthy complaint alleged that the University's conduct constituted a refusal to bargain because it became clear that the University "never had any intention of bargaining anything but" the placement of the employees into the SEIU bargaining unit. The Federation alleged that the University's conduct was not only a refusal to bargain, it also "interfered with the representational relationship" between the Federation and the employees. These allegations sufficiently filled out the general categories identified in the

16

preliminary ruling so as to notify the University it would have to defend its practice of insisting on the transfer of the employees to SEIU.

And if that was not enough notice, the Federation's appeal of the examiner's decision specifically complained that the University had continually insisted on a modification of the Federation's bargaining unit. The Federation stated that it did not feel it could bargain the employees' most basic bargaining rights, but the University continued to insist on it:

> The University's position throughout all of this time has been to insist in the exact same action for which they had been found guilty of a ULP [unfair labor practice], modification of the WFSE [Federation] bargaining unit. The employees' bargaining rights have been neither something the WFSE felt it could bargain nor something it was willing to bargain despite the University's persistence.

The University's unbending wish to move the employees into a different union was plainly at the heart of the Federation's complaint of refusal to bargain and interference with employee rights.

Even now, the University does not claim to have evidence that it would have put into the record if it had known the Commission was going to consider enforcing the employees' right to remain in their historic bargaining unit. The University should not have been surprised that the Commission, upon reading the correspondence in which the University repeatedly insisted on reconfiguring the bargaining units, would find it necessary to protect its exclusive authority from the University's incursion.

17

We conclude the University had adequate notice of the issue the Commission found dispositive, and the Commission did not deny the University an opportunity to be heard.

The superior court's decision is reversed. The Commission's decision is reinstated.

Becker, J.

WE CONCUR:

Leach, C.J.

Cox, J.