*The Court of Appeals*
of the
*State of Washington*
*Seattle*

RICHARD D. JOHNSON,
*Court Administrator/Clerk*

DIVISION I
One Union Square
600 University Street
98101-4170
(206) 464-7750
TDD: (206) 587-5505

September 22, 2014

Edward Earl Younglove, III
PO Box 7846
Olympia, WA, 98507-7846
edy@ylclaw.com

Donna Jacobs Stambaugh
1116 W Riverside Ave
Spokane, WA, 99201-1106
donnas@atg.wa.gov

Anita Hunter
1212 Jefferson St SE Ste 300
Olympia, WA, 98501-2332
anitah@wfse.org

CASE #: 70541-5-I
State of WA-Office of The Governor, Appellant v. WA Federation of State Employees, Respondent

King County, Cause No. 12-2-24215-1.SEA

Counsel:

Enclosed is a copy of the opinion filed in the above-referenced appeal which states in part:

"We affirm."

Counsel may file a motion for reconsideration within 20 days of filing this opinion pursuant to RAP 12.4(b). If counsel does not wish to file a motion for reconsideration but does wish to seek review by the Supreme Court, RAP 13.4(a) provides that if no motion for reconsideration is made, a petition for review must be filed in this court within 30 days.

In accordance with RAP 14.4(a), a claim for costs by the prevailing party must be supported by a cost bill filed and served within ten days after the filing of this opinion, or claim for costs will be deemed waived.

Sincerely,

Richard D. Johnson
Court Administrator/Clerk

jh
Enclosure

c:     The Honorable Jean Z. Rietschel



FILED
COURT OF APPEALS
STATE OF WASHINGTON

2014 SEP 22 AM 9: 19

IN THE COURT OF APPEALS FOR THE STATE OF WASHINGTON

| | | |
|---|---|---|
| STATE OF WASHINGTON—<br>OFFICE OF THE GOVERNOR, | ) ) ) | No. 70541-5-I |
| Appellant, | ) ) | DIVISION ONE |
| v. | ) ) | PUBLISHED OPINION |
| PUBLIC EMPLOYMENT<br>RELATIONS COMMISSION, | ) ) ) | |
| Respondent, | ) ) | |
| WASHINGTON FEDERATION<br>OF STATE EMPLOYEES, | ) ) | FILED: September 22, 2014 |
| Respondent. | ) ) ) | |

LEACH, J. — The State appeals a superior court decision affirming a Public Employment Relations Commission (PERC or Commission) decision that included certain independent contractor interpreters in the statewide collective bargaining unit defined in RCW 41.56.030(10). These interpreters work in local health jurisdictions and public hospitals through the voluntary Medicaid Administrative Match (MAM) program. The State claims this statute authorizes collective bargaining only with interpreters paid from state funds and that PERC exceeded its authority and erroneously interpreted and applied the statute by including in the bargaining unit interpreters paid from local and federal matching funds under the MAM program. Because the Commission did not exceed its

authority or err in its interpretation of the statute and substantial evidence supports its finding that the statute includes MAM interpreters in the statewide bargaining unit, we affirm.

## FACTS

Under the Medicaid program, states receive federal matching funds to provide health-related services to qualified low-income and/or disabled individuals. The Department of Social and Health Services (DSHS) administers and distributes federal funds received by the state for public assistance and medical services programs.[1] DSHS must ensure the availability of bilingual services for non-English speaking applicants and recipients.[2] Private health care providers who accept Medicaid patients also receive federal funds and must ensure bilingual services.

To reduce the burden on individual health care providers who accept Medicaid patients at low reimbursement rates, DSHS has voluntarily undertaken to fund these providers' interpreter services. DSHS sometimes uses its own employees to provide interpreter services. It also provides these services by contracting with nonprofit language access brokers, who receive a fixed fee based on an estimated number of appointments. DSHS sets a separate hourly rate for interpreters, which the broker passes through to a language access agency. The language access agency in turn contracts with and pays the

---

[1] RCW 74.04.015.
[2] RCW 74.04.025.

individual interpreter. The State's portion of the funds matched by federal moneys comes from state legislative appropriations.

Under the voluntary MAM program, which DSHS administers under federally required terms for Medicare and Medicaid services, certain local health jurisdictions and public hospitals may also receive federal funds for interpreter services. Participating local entities provide their own matching funds and do not receive state funding or participate in the DSHS language access brokerage system.

In 2010, the state legislature passed ESSB 6726,[3] which granted collective bargaining rights to independent contractors providing "spoken language interpreter services for department of social and health services [DSHS] appointments or medicaid enrollee appointments." The law designates the governor as the public employer and independent contractor "language access providers" (interpreters) as public employees solely for purposes of collective bargaining on limited subjects.[4]

In July 2010, the Washington Federation of State Employees (union) petitioned for certification as the exclusive bargaining representative of a statewide bargaining unit of language access providers. The State and the union agreed to a bargaining unit description almost identical to the statutory language. Later, the union presented a list of 217 interpreters it believed should be included

---

[3] LAWS OF 2010, ch. 296, § 3(14)(a).
[4] RCW 41.56.510(1).

-3-

in the bargaining unit. The State disagreed. After an election, the union was certified as the exclusive bargaining representative. The challenges to the eligibility of the 217 voters did not affect the outcome of the election.

The State and the union then agreed to the eligibility of all but 34 of the challenged interpreters: 30 working in the MAM program and 4 working in legal settings. After a hearing, the PERC executive director issued a decision including all 34 challenged voters in the bargaining unit.[5] The State appealed to the Commission, which affirmed.[6] The State then appealed to King County Superior Court, which reversed the Commission's inclusion of the legal interpreters but affirmed its inclusion of the 30 MAM interpreters.

The State appeals. The union does not cross appeal to exclusion of the four legal interpreters.

STANDARD OF REVIEW

The Washington Administrative Procedure Act (WAPA), chapter 34.05 RCW, governs judicial review of a final administrative decision of the Commission.[7] When this court reviews the Commission's action, it sits in the same position as the trial court, applying the standards of the WAPA directly to the record of the Commission's proceeding.[8] A reviewing court may grant relief

---

[5] Order Determining Eligibility Issues, In re Interpreters United – Wash. Fed'n of State Emps., No. 23334-E-10-3570 (Wash. Pub. Emp't Relations Comm'n Nov. 18, 2011).

[6] In re Interpreters United – Wash. Fed'n of State Emps., No. 23334-E-10-3570 (Wash. Pub. Emp't Relations Comm'n June 19, 2012).

[7] RCW 41.56.165; RCW 34.05.030(5).

[8] Univ. of Wash. v. Wash. Fed'n of State Emps., 175 Wn. App. 251, 258, 303 P.3d 1101 (2013) (citing Tapper v. Emp't Sec. Dep't, 122 Wn.2d 397, 402,

only if it determines that the Commission's order is invalid for one of the reasons set forth in the WAPA.[9] Here, the State claims the WAPA authorizes judicial relief from the Commission's order because

> (b) The order is outside the statutory authority or jurisdiction of the agency conferred by any provision of law;
>
> . . . .
>
> (d) The agency has erroneously interpreted or applied the law;
>
> (e) The order is not supported by evidence that is substantial when viewed in light of the whole record before the court, which includes the agency record for judicial review, supplemented by any additional evidence received by the court under this chapter.[10]

We review the Commission's findings of fact for substantial evidence and its conclusions of law de novo.[11] Substantial evidence exists if it is sufficient to persuade a fair-minded, rational person of the truth of the matter asserted.[12] In reviewing questions of law, an appellate court may substitute its determination for the Commission's.[13] But in view of PERC's expertise in labor relations, courts give its interpretation of the collective bargaining statutes "great weight and substantial deference."[14] Where an administrative decision involves a mixed

---

858 P.2d 494 (1993)); City of Seattle v. Pub. Emp't Relations Comm'n, 160 Wn. App. 382, 388, 249 P.3d 650 (2011).

[9] Univ. of Wash., 175 Wn. App. at 258 (citing Yakima Police Patrolmen's Ass'n v. City of Yakima, 153 Wn. App. 541, 553, 222 P.3d 1217 (2009)).

[10] RCW 34.05.570(3)(b), (d), (e).

[11] Univ. of Wash., 175 Wn. App. at 258 (citing Yakima Police, 153 Wn. App. at 552).

[12] City of Federal Way v. Pub. Emp't Relations Comm'n, 93 Wn. App. 509, 512, 970 P.2d 752 (1998).

[13] City of Seattle, 160 Wn. App. at 388 (citing Pasco Police Officers' Ass'n v. City of Pasco, 132 Wn.2d 450, 458, 938 P.2d 827 (1997)).

[14] City of Vancouver v. Pub. Emp't Relations Comm'n, 107 Wn. App. 694, 703, 33 P.3d 74 (2001).

question of law and fact, "'the court does not try the facts de novo but it determines the law independently of the agency's decision and applies it to facts as found by the agency.'"[15] We review statutory interpretation de novo.[16]

## ANALYSIS

The State contends first that the Commission erroneously interpreted RCW 41.56.030 and .510 to include in the statewide bargaining unit interpreters providing services for local health jurisdictions and public hospitals under the MAM program. According to the State, because these interpreters are not paid with state funds budgeted by the state legislature, they cannot be included in the statewide bargaining unit.

When construing a statute, our primary objective is to ascertain and carry out the legislature's intent.[17] Statutory interpretation begins with the statute's plain meaning, which we discern from the ordinary meaning of its language in the context of the whole statute, related statutory provisions, and the statutory scheme as a whole.[18] If the statute's meaning is unambiguous, our inquiry ends.[19]

---

[15] City of Seattle, 160 Wn. App. at 388 (quoting Renton Educ. Ass'n v. Pub. Emp't Relations Comm'n, 101 Wn.2d 435, 441, 680 P.2d 40 (1984)).
[16] State v. Gray, 174 Wn.2d 920, 926, 280 P.3d 1110 (2012).
[17] Gray, 174 Wn.2d at 926.
[18] Lake v. Woodcreek Homeowners Ass'n, 169 Wn.2d 516, 526, 243 P.3d 1283 (2010).
[19] Lake, 169 Wn.2d at 526.

RCW 41.56.510 authorizes collective bargaining for certain language access providers. The statute defines "language access provider" for purposes of collective bargaining as follows:

> (10)(a) "Language access provider" means any independent contractor who provides spoken language interpreter services for department of social and health services appointments or medicaid enrollee appointments, or provided these services on or after January 1, 2009, and before June 10, 2010, whether paid by a broker, language access agency, or the department.
> (b) "Language access provider" does not mean an owner, manager, or employee of a broker or a language access agency.[20]

For purposes of collective bargaining only, "the governor is the public employer of language access providers who, solely for the purposes of collective bargaining, are public employees."[21] RCW 41.56.510(2) requires a single statewide bargaining unit for these language providers.[22] RCW 41.56.510(2)-(9) limits the scope of collective bargaining for this unit to certain matters and sets out directions and requirements for state budget approval of collective bargaining agreements.

The State argues that "[t]o apply the statute to the Medicaid Administrative Match program, the Commission had to ignore these statutory provisions dealing with the appropriation process." The State asserts that while interpreters under the brokerage program are "doing business with DSHS," those in the MAM program are "not connected to the state system for interpreters." The State also

---

[20] RCW 41.56.030(10)(a)-(b). This section has been renumbered since the Commission's decision, which refers to it as RCW 41.56.030(11).
[21] RCW 41.56.510(1).
[22] RCW 41.56.510(2)(a).

points to this sentence in the 2011 state budget legislation: "The amounts in this subsection do not include federal administrative funds provided to match nonstate expenditures by local health jurisdictions and government hospitals."[23] The State concludes from this that the statute does not extend collective bargaining to "those separately-funded [MAM] interpreters" who are not "connected to the state budgetary process."

The State's argument ignores the fact that under both the DSHS brokerage system and the MAM program, independent contractor interpreters are "doing business" with language access agencies, which pay the interpreters directly. Neither group of interpreters contracts directly with DSHS. And, as PERC noted in its decision, "[t]he source of funds is not relevant to our analysis." "Source of funds is not among the unit determination criteria set forth in RCW 41.56.060, and . . . . it is commonplace to find a mix of federally funded, state funded, grant funded, and locally funded positions commingled in local government bargaining units."[24] "The source of funds does not equate with the right of control when determining who is the employer."[25]

By including independent contractor interpreters paid by third party agencies without distinguishing between funding sources, the statute by its terms

---

[23] ENGROSSED SECOND SUBSTITUTE H.B. 1087, at 78-79, 62nd Leg., 1st Spec. Sess. (Wash. 2011).

[24] In re Benton County, No. 7651-A (Wash. Pub. Emp't Relations Comm'n Apr. 8, 2003) (citing Direction of Election, In re Kitsap County, No. 4314 (Wash. Pub. Emp't Relations Comm'n Mar. 9, 1993)).

[25] Order of Dismissal, In re Spokane Public Library, No. 14439-C-99-930 (Wash. Pub. Emp't Relations Comm'n Dec. 8, 2000).

includes both the DSHS brokerage system interpreters and the MAM program interpreters. The Commission correctly concluded that independent contractor MAM interpreters provide spoken language services at Medicaid enrollee appointments. According to the plain language of the statute, these interpreters are language access providers properly included in the bargaining unit. Therefore, the Commission did not erroneously interpret RCW 41.56.030 and .510 when it included in the bargaining unit the independent contractor interpreters in the MAM program.

The State contends next that substantial evidence does not support PERC's finding that MAM interpreters are paid in the manner required by statute. RCW 41.56.030(10) includes in the definition of eligible language access providers "any independent contractor who provides spoken language interpreter services for department of social and health services appointments or medicaid enrollee appointments, . . . whether paid by a broker, language access agency, or the department." The two interpreters who testified at the administrative hearing provided services at public hospitals as part of the MAM program. These independent contractor interpreters testified that language access agencies employed and paid them and that they did not know the source of the agencies' funding. The statute includes independent contractor interpreters paid by language access agencies. It does not exclude interpreters whose services are not paid with state funds. Substantial evidence supports the Commission's finding that independent contractor MAM interpreters are paid in the manner

required by RCW 41.56.030(10) and therefore meet the statutory definition of a language access provider.

Finally, the State contends that PERC exceeded its authority by determining bargaining relationships for third parties "outside the realm of public employment" and therefore "outside the parameters of RCW 41.56.510." According to the State, PERC's decision "would force third party entities to comply with terms of a collective bargaining agreement in which they had no participation or authority in crafting and for which they receive no state money to implement" and that this amounts to an unauthorized "unfunded mandate[ ]."

PERC has jurisdiction and authority "to provide, in the area of public employment, for the more uniform and impartial (a) adjustment and settlement of complaints, grievances, and disputes arising out of employer-employee relations and, (b) selection and certification of bargaining representatives."[26] The Commission also has authority to determine collective bargaining units upon consideration of factors such as "the duties, skills, and working conditions of the public employees; the history of collective bargaining by the public employees and their bargaining representatives; the extent of organization among the public employees; and the desire of the public employees."[27]

Through collective bargaining, the State and the previous bargaining unit of DSHS brokerage interpreters negotiated contracts that affected language

---

[26] RCW 41.58.005(1).
[27] RCW 41.56.060(1).

-10-

access agencies not parties to those agreements. Including MAM interpreters in the bargaining unit will produce the same types of transactions and relationships. The PERC decision does not affect collective bargaining relationships between public hospitals or local health jurisdictions and their own employees but only the compensation for independent contractor interpreters, who benefit from a statewide collective bargaining unit.

As the Commission noted in its decision, the legislature has the authority to identify exclusions to the statewide bargaining unit but to this point has not done so. We hold that PERC did not exceed its authority under RCW 41.58.005 and 41.56.060 when it included the MAM program interpreters in the statewide bargaining unit of interpreters.

## CONCLUSION

Because PERC correctly interpreted and applied RCW 41.56.030 and .510, substantial evidence supports its finding that interpreters providing services through the MAM program are language access providers as defined by the statute, and the Commission did not exceed its statutory authority, we affirm.

_Leach, J._

WE CONCUR:

_Spearman, C.J._

-11-